A00A1307. CHOATE CONSTRUCTION COMPANY, INC. v. IDEAL ELECTRICAL CONTRACTORS, INC.
(541 SE2d 435)

SMITH, Presiding Judge.

Choate Construction Company, Inc., the general contractor for the construction of a medical facility in LaGrange, appeals from the trial court's entry of judgment on a jury verdict in favor of Ideal Electrical Contractors, Inc., a subcontractor on the project, in Ideal's action against Choate for breach of contract and in quantum meruit for extra work performed. Choate contends the trial court erred in the following: in denying its motion to dismiss or, in the alternative, to compel arbitration; in denying its motions for directed verdict, judgment notwithstanding the verdict, and for a new trial; and in failing to require Ideal to elect its remedy, permitting it to recover both in contract and quantum meruit. The trial court denied Choate's motion to dismiss or, in the alternative, to compel arbitration because it found that the subcontract did not include a mandatory arbitration clause and that it included a condition precedent to arbitration which was not fulfilled. The trial court also denied the motions for directed verdict, judgment n.o.v., and new trial on Ideal's claims for recovery in quantum meruit. The motions were made on the ground that the contract itself addressed payment for changes in the work and extra work and that Ideal therefore was precluded from seeking payment under a theory of quantum meruit. Because we disagree with these findings, we conclude that the trial court erred in denying Choate's motions.

1. We first note that although the denial of a motion to compel arbitration is subject to interlocutory appeal under OCGA § 5-6-34 (b), the denial may also be appealed after final judgment. *Bishop Contracting Co. v. Center Bros., Inc.*, 213 Ga. App. 804, 805-806 (1) (445 SE2d 780) (1994).

2. In Choate's motion to dismiss or, in the alternative, to compel arbitration, it sought to enforce certain provisions in the subcontract requiring dissatisfied subcontractors to submit their disputes to binding arbitration.

Article IX, Paragraph 23 of the subcontract provides in Section A

that all subcontractors are bound to Choate to the "same extent that [Choate] is bound to" the owner under the contract between Choate and the owner and that subcontractors must go through the contractor before initiating actions against the owner.

Section B of Paragraph 23 provides that subcontractors will be bound by any arbitration between Choate and the owner on matters involving the subcontractor's rights.

Section C of Paragraph 23 provides:

> If at any time any controversy should arise between contractor and subcontractor, which controversy is not controlled or determined by sections (a) or (b) above or other provisions of this subcontract, then the decision of contractor shall be followed by subcontractor, and said controversy shall be decided as follows:
>
> (i) Subcontractor shall conclusively be bound by and abide by contractor's decision, unless subcontractor shall commence arbitration proceedings.
>
> (ii) If subcontractor decides to appeal the decision of contractor, then the controversy shall be decided by arbitration in accordance with the construction industry rules of the American Arbitration Association and the arbitration decision shall be final and binding both parties to resolve the controversy; provided, however, that arbitration proceedings shall be commenced by subcontractor not later than 30 days following receipt of notice of contractor's decision.

Section E of Paragraph 23 provides:

> Should either party to this agreement institute a lawsuit, or demand arbitration to enforce any of the provisions hereof, to protect its interest in any matter arising under the subcontract, or to collect damages for the breach of the subcontract . . . , the prevailing party shall be entitled to recover and the losing party agrees to pay all reasonable attorney's fees, costs, charges, and expenses expended or incurred therein.

The trial court concluded that Section C "did not provide that arbitration was a mandatory substitute for litigation" but merely provided the option of arbitrating. Choate contends this conclusion is erroneous, and we agree.

OCGA § 13-2-3 commands us, in construing a contract, to "ascertain the intention of the parties." A contract must be enforced if "that intention is clear and it contravenes no rule of law and sufficient

words are used to arrive at the intention." Id. The subcontract in issue reflects clearly the intention of the parties to resolve all disputes by arbitration. It is apparent both in the "flow down" provision in Section A[1] and in the mandatory language regarding arbitration used in Section C.

The trial court construed Section E as creating an ambiguity because it intimates that instituting a lawsuit is an alternative to demanding arbitration. But the language in Section E does not authorize instituting a lawsuit; it simply provides for payment of costs and attorney fees in the event that one or the other party does, in fact, institute a lawsuit, whether forbidden by the contract or not. With respect to any matter arising under the subcontract, if *either party* institutes a lawsuit or demands arbitration and loses, Section E requires it to bear all costs and expenses, including attorney fees.

3. The trial court also concluded that a " 'final decision' " on the part of Choate was required "for purposes of submitting the matter to arbitration." The trial court found, with regard to Ideal's claims, that Choate had not rendered such a decision, nor had it rendered a decision that would conclusively bind Ideal without Ideal having chosen to arbitrate. We agree with Choate that these conclusions were error as well.

Section C of Paragraph 23 places the burden on Ideal to arbitrate any decision made by Choate or be bound by it. It does not, however, use any language modifying the word "decision." Conditions precedent, which are not favored in interpreting contracts, are created by language such as "on condition that," "if," and "provided," or by explicit statements that certain events are to be construed as conditions precedent. *Fulton County v. Collum Properties*, 193 Ga. App. 774, 775 (388 SE2d 916) (1989). If the contract's terms are clear and unambiguous and do not clearly establish a condition precedent, we cannot construe the contract to create one. Id. at 775-776 (1) (b). Yet here, that is what the trial court did.

On November 6, 1995, Ideal's counsel sent a letter to Choate listing its claims for additional compensation. Choate rendered its decision, responding to each of Ideal's claims by letter dated November 30, 1995. Under the subcontract provisions, if Ideal was not satisfied with Choate's decision on its claims, it was required to demand arbitration within 30 days of Choate's response to its claims. Because Ideal did not demand arbitration after receiving the November 30 letter, under the contract provisions it became bound by Choate's decision.

---

[1] The contract between the owner and Choate requires arbitration of disputes, and subcontract Art. IX, Par. 23, Sec. A requires subcontractors to be bound by this contract when their rights and responsibilities are concerned.

Ideal correctly describes a 1960 decision of this court. In it, this court held that an early Supreme Court of Georgia case established that

> an agreement to refer matters in dispute, to arbitration, is not sufficient to oust the Courts of Law or Equity of their jurisdiction. Unless the agreement provides that the parties shall arbitrate their differences as a condition precedent to a right to sue, a party may resort to the courts to settle a dispute.

(Citations and punctuation omitted.) *Millican Elec. Co. v. Fisher*, 102 Ga. App. 309, 311 (3) (116 SE2d 311) (1960). But the Georgia Arbitration Code for Construction Contracts, OCGA §§ 9-9-80 through 9-9-97, was enacted after *Fisher* was decided. The Supreme Court of Georgia later noted that in construction contracts, but not in other contracts, the parties may agree, under the authority of the Georgia Arbitration Code for Construction Contracts, to a "contractual imposition of the duty to arbitrate as an exclusive and binding remedy for disputes which arise in the future." *Ga. Kraft Co. v. Rhodes*, 257 Ga. 469, 472 (360 SE2d 595) (1987); see also *Rhodes v. Inland-Rome, Inc.*, 195 Ga. App. 39, 41 (3) (392 SE2d 270) (1990) (pre-1988 revision contracts). In 1988, the General Assembly revised the Georgia Arbitration Code extensively, renumbering the statute, deleting the phrase "for Construction Contracts" from its title, and extending the enforcement of arbitration provisions to "all contracts in which the parties have agreed to arbitration in writing. Ga. L. 1988, p. 903 et seq." *Weyant v. MacIntyre*, 211 Ga. App. 281, 282 (1) (438 SE2d 640) (1993). See OCGA §§ 9-9-1 through 9-9-84. Since the subcontract was executed in 1995, it was entirely permissible for the parties to contract for binding arbitration. The trial court erred in construing the contract otherwise.

4. Ideal claimed it was owed compensation for extra work it alleged was performed outside the contract. Choate contends that its motions for directed verdict and judgment n.o.v. as to these claims should have been granted because Ideal admitted the validity of the subcontract, which itself precluded Ideal from seeking payment for any changes or extra work not approved in writing. We agree.

Ideal's vice president admitted that Ideal entered into the subcontract, that the subcontract encompassed the rights and obligations of both parties, and that it formed the basis of this lawsuit. Article IV of the subcontract provided, in pertinent part: "Contractor agrees to pay subcontractor for the performance of its work the sum set forth as the subcontract amount subject to additions and deductions for changes as may be agreed upon in writing." Paragraph 7 of

Article IV provided, in part: "There will be no payment for extra work unless authorized in writing by contractor prior to the beginning of the actual work."[2] Further, Article X of the subcontract provided that it could be amended only by a signed writing.

It has long been the law in Georgia that although a party may plead in alternative counts, no recovery may be had in quantum meruit when a contract governs all claimed rights and responsibilities of the parties. *Gilbert v. Powell*, 165 Ga. App. 504, 507-509 (2) (301 SE2d 683) (1983). See *Lord Jeff Knitting Co. v. Lacy*, 195 Ga. App. 287, 288 (2) (393 SE2d 55) (1990). The contract in *Gilbert*, like the contract in this case, included provisions under which all changes and extra work were addressed. This court held in *Gilbert* that because the entire agreement was covered in the written contract, no evidence could be offered that would support a theory of recovery under quantum meruit. Id. at 508.

The same is true here. It is plain from the language of the subcontract that it contemplated changes and modifications to the original subcontract and provided a method for carrying out such changes and modifications. It provided unambiguously that any work done without conforming to the process set forth in the contract for approving that work would not be compensated. It would be unfair, under these circumstances, to allow a subcontractor to circumvent the explicit terms of the subcontract it had admittedly agreed to by seeking payment outside the subcontract for work that was contemplated and provided for under the subcontract. Because Ideal admitted the subcontract but did not follow the procedure it prescribed for changes in work or extra work, it cannot recover for such work under a theory of quantum meruit. The trial court erred in denying Choate's motions for directed verdict and judgment n.o.v. and in allowing the jury to award payment to Ideal under a theory of quantum meruit. *Lord Jeff Knitting Co.*, supra.

5. Our holding in Division 3 renders it unnecessary that we consider Choate's contention that the trial court erred in failing to require Ideal to elect between recovery under the contract and recovery in quantum meruit.

*Judgment reversed. Johnson, C. J., and Phipps, J., concur.*

DECIDED NOVEMBER 2, 2000.

---

[2] Indeed, two written change orders were executed.

*Smith, Curry & Hancock, Philip E. Beck, Mark V. Hanrahan*, for appellant.
*Daniel W. Lee*, for appellee.