A04A2122. HOLT & HOLT, INC. v. CHOATE CONSTRUCTION COMPANY et al.
(609 SE2d 103)

ELLINGTON, Judge.

Holt & Holt, Inc. ("Holt") appeals from an order of the Superior Court of Cobb County which granted partial summary judgment to Choate Construction Company and Fidelity & Deposit Company of Maryland[1] (collectively "Choate") as to $67,345 of the damages Holt claimed for subcontractor work performed. Holt also appeals the court's order staying arbitration proceedings pursuant to the terms of a contract between the parties. Finding no reversible error, we affirm.

Summary judgment is proper when there is no genuine issue of material fact remaining for jury resolution and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant. *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997). Similarly, we review a grant of a motion to stay arbitration de novo to determine whether the trial court was correct as a matter of law. See *Tigner v. Shearson-Lehman Hutton, Inc.*, 201 Ga. App. 713, 715 (411 SE2d 800) (1991). Further, the construction of a contract is also a question of law subject to de novo review. *Deep Six, Inc. v. Abernathy*, 246 Ga. App. 71, 73 (2) (538 SE2d 886) (2000). Where contract language is unambiguous, construction is unnecessary and the court simply enforces the contract according to its clear

---

[7] OCGA § 22-2-102.1.

[1] Fidelity & Deposit Company of Maryland is a surety according to the terms of a bond purchased from it by Choate to discharge Holt's materialman's lien pending resolution of this suit.

terms. *Caswell v. Anderson*, 241 Ga. App. 703 (527 SE2d 582) (2000). So viewed, the record reveals the following relevant evidence.

On January 30, 2002, Holt entered into an agreement to perform drywall subcontractor work for general contractor Choate on a new high-rise building. The contract required Holt to perform and complete all work in accordance with the January 18, 2002 construction schedule incorporated into the agreement. The contract provided that all work "shall be subject to the final acceptance of the Contractor, Architect/Engineer and Owner." In the event that Holt failed to meet its obligations, the contract entitled Choate to issue written decisions terminating Holt's employment or supplementing its work with labor and materials, the cost of which would be deducted from payment due Holt. Finally, the contract required that "any claim, dispute, or controversy" between Choate and Holt "shall be conclusively resolved and settled" pursuant to the provisions of its claims and disputes article, which provided in relevant part:

> [Holt] shall conclusively be bound by and abide by [Choate's] decision, unless [Holt] shall timely commence arbitration proceedings in strict accordance with the following provisions:
> i. If [Holt] decides to appeal the decision of [Choate], then the controversy shall be decided by arbitration . . . , and the arbitration decision shall be final and binding on both parties; provided, however, that arbitration proceedings shall be commenced by [Holt] not later than 30 days following [Holt's] receipt of notice of [Choate's] decision; otherwise, [Choate's] decision becomes final and binding.

On March 20 and April 12, 2002, Choate informed Holt that it was in default under the contract and that unless Holt immediately remedied its defective performance, Choate would hire additional or replacement contractors at Holt's expense. Although Holt argues it remedied any defective performance and obtained extensions of time to perform the work, it is undisputed that on May 29, 2002, Choate sent Holt a certified letter informing it of its decision to supplement Holt's work forces. This letter stated that it was the "contractor's decision to do so due to Holt's inability to maintain the project schedule as well as follow through on the many commitments made by [Holt]." The letter also advised Holt that "in accordance with your subcontract on this project, Choate intends to hold Holt fully responsible for all costs incurred by Choate due to the delays by your firm." Thereafter, Choate employed additional workers and also sent Holt three change orders setting forth the specific amounts Choate would

be charging against Holt for the supplemental work. These June 12, July 2, and August 8, 2002 orders totaled $67,345.

On November 5, 2002, after Choate had "closed out" its prime contract with the owner, Holt filed a demand for arbitration with the American Arbitration Association alleging a breach of contract and seeking $152,529 in contract damages. On December 4, 2002, Choate initiated the instant litigation by filing a motion to stay arbitration in the Superior Court of Cobb County. Holt answered, seeking to compel arbitration, but also counterclaimed for $152,529 in contract damages. Choate amended its complaint to seek declaratory relief as to any counterclaimed amounts barred by the contract. On March 18, 2003, the superior court stayed arbitration, and on April 20, 2004, granted Choate partial summary judgment as to $67,345 in charges attributable to its May 29, 2002 decision. Holt appeals from the grant of partial summary judgment and the stay of arbitration.

1. Holt contends the trial court erred in granting partial summary judgment to Choate because material issues of fact remained as to whether Choate's May 29, 2002 letter was a "contractor's decision" as contemplated by the parties' contract. Holt contends the letter was ineffective as a "formal decision" because it did not employ such terminology, contain "customary content," or give Holt adequate notice that it had 30 days to challenge the decision pursuant to the contract. We resolved these very issues when we construed substantially the same contract language in *Choate Constr. Co. v. Ideal Electrical Contractors*, 246 Ga. App. 626, 628 (3) (541 SE2d 435) (2000). The plain language of the contract places the burden on Holt "to arbitrate any decision made by Choate or be bound by it. It does not, however, use any language modifying the word 'decision.'" Id. Consequently, the courts will not read into the contract any condition precedent qualifying what "decision" means. Id. In the instant case, the certified letter informed Holt of Choate's decision to supplement its work force and to charge those costs against Holt. It was, therefore, a written contractor's decision within the plain language of the contract. Id. Moreover, Holt, as a party to the contract it signed, is presumed to know that it had 30 days within which to arbitrate that decision. *Intl. Indem. Co. v. Smith*, 178 Ga. App. 4, 5 (1) (342 SE2d 4) (1986) ("[O]ne who signs a contract is presumed to know its contents.") (citation and punctuation omitted). Therefore, Holt's contention that the decision was inadequate to put it on notice of its contract rights is without merit.

Holt further argues that Choate's conduct after issuing the May 29 decision reveals that Choate did not intend the decision to be final and binding. Holt contends that certain payments made to it and the three change orders issued after the letter signify that the matter of

work force supplementation was still being debated. Choate's conduct, however, was not inconsistent with the decision described in the May 29 letter. It is undisputed that Choate supplemented the work force and that the change orders reflected what Choate intended to charge Holt for the additional work. Further, even if we were to construe the last change order, dated August 6, 2002, as Choate's final decision on the matter, Holt still filed its demand for arbitration three months after that date. In fact, Holt filed lien claims against the project in the full amount it now claims for breach of contract on September 19, 2002, after Choate had made its final deductions from Holt's pay. Even from that late date, a date upon which Holt plainly recognized that a dispute on its contract existed, the arbitration demand was untimely.

Finally, Holt contends that material issues of fact remain with respect to the "scope" of the May 29 decision. However, the contract allows Choate "at its sole option" to provide "any such labor, equipment, tools, and materials" required to supplement the work and to "deduct all costs thereof" from Holt's subcontract balance. Thus, the scope of the May 29 decision is defined by the contract and nothing remains for jury determination. The trial court did not err, therefore, in holding that the May 29, 2002 letter was a contractor's decision as to $67,345 in supplemental work and so ruling as a matter of law. Because Holt failed to timely arbitrate that decision under the contract, "it became bound by Choate's decision." *Choate Constr. Co. v. Ideal Electrical Contractors*, 246 Ga. App. at 628 (3).

2. Holt contends the contract's 30-day period in which to file a claim for arbitration is an impermissibly short limitations period. It has long been a principle of Georgia law, however, that "[t]he parties [to a contract] may fix upon a shorter period, and the stipulation violates no principle of public policy, provided the period fixed be not so unreasonable as to show imposition or undue advantage in some way." *Brown v. Savannah Mut. Ins. Co.*, 24 Ga. 97, 100 (1858). Holt has not demonstrated how the 30-day limitation, which is part of a standard contract commonly used in the construction industry,[2] was unreasonable. On the contrary, given that construction projects end, sometimes within a relatively short period of time from their commencement, it appears reasonable to limit the time within which to file arbitration claims so that disputes may be resolved expeditiously, preferably while the project is still underway, and with minimal delays and consequent expense to all involved.

---

[2] The limitation provision at issue is from American Institute of Architects Form A201, Par. 4.4.6. The contract has been endorsed by the Association of General Contractors of America.

Finally, we conclude that Holt's argument that the 30-day limitations period contravenes OCGA § 44-14-366 is also without merit. That Code section provides that the "right to claim a lien or to claim upon a bond may not be waived in advance of furnishing of labor, services, or materials," OCGA § 44-14-366 (a), and that "oral or written statement[s] by the claimant purporting to waive, release, impair, or otherwise adversely affect a lien or bond claim" are unenforceable. OCGA § 44-14-366 (b). The 30-day limitation at issue does not impair Holt's right to claim a lien or to claim upon a bond. Holt's inaction and failure to pursue its contract remedies resulted in its being bound by the contractor's decision. Thus, Holt's conduct, not the terms of the contract, impaired its claim and any lien rights it would have had with respect to that claim had it timely arbitrated the contractor's decision to a favorable result. Because the 30-day limitations period does not contravene OCGA § 44-14-366, the trial court did not err in enforcing it.

3. The trial court did not err in granting Choate's motion to stay arbitration. As we held in Division 1, the May 29 certified letter constituted a contractor's decision within the meaning of the contract. As we held in Division 2, the 30-day period within which Holt had to contest that decision was enforceable. Because Holt failed to avail itself of its right to arbitrate the decision within 30 days, it is bound by it. Consequently, Holt's single, liquidated arbitration demand for $152,529 contained nonarbitrable claims. To address these claims, the trial court properly granted the stay. OCGA § 9-9-6 (b) (2), (3). To the extent Holt now argues its remaining claims are subject to arbitration, that precise issue is not ripe for appellate review because it has not been raised in and resolved by the trial court and we have no legal ruling to review for error. See *Oasis Goodtime Emporium I v. Cambridge Capital Group*, 234 Ga. App. 641, 642 (1) (507 SE2d 823) (1998).

*Judgment affirmed. Andrews, P. J., and Miller, J., concur.*

DECIDED DECEMBER 8, 2004 —
RECONSIDERATION DENIED JANUARY 19, 2005 —

*Owen, Gleaton, Egan, Jones & Sweeney, Maurice M. Egan, Jr., Eric A. Kane, Larry D. McCollum*, for appellant.
*Stites & Habison, Jeffrey J. Nix, Ronald J. Stay, Jr.*, for appellees.