**THIRD DIVISION**
**DOYLE, P. J.,**
**HODGES and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 31, 2024**

# In the Court of Appeals of Georgia

A24A0678. EMJ CONSTRUCTION, LLC et al. v. BEACON
SALES ACQUISITION, INC.

WATKINS, Judge.

EMJ Construction, LLC f/k/a EMJ Corporation and Western Surety Company (the "Appellants") appeal from an order denying their motion for summary judgment in this suit on a bond posted to discharge a materialman's lien. The Appellants argue, inter alia, that the material supplier, Beacon Sales Acquisition, Inc. t/a Beacon Roofing Supply, does not qualify as a proper lien claimant under Georgia law because it did not furnish materials "at the instance of the owner, contractor, or some other person acting for the owner or contractor" under OCGA § 44-14-361 (a). We agree and therefore reverse the denial of the Appellants' motion for summary judgment.

Viewed in the light most favorable to Beacon, as the non-moving party,[1] the evidence shows that EMJ was the general contractor on the Watercrest Macon Senior Living project in Macon (the "Project"). On or about January 31, 2020, EMJ entered into a subcontract with Citadel Siding and Distribution, LLC ("Citadel")[2] for Citadel to install siding, stucco, and windows on the Project (the "Subcontract"). The Subcontract contained an anti-assignment clause prohibiting the delegation of any portion of the work without EMJ's prior written consent.

Citadel ordered siding materials that it needed to perform the work under the Subcontract from Beacon. Notably, Citadel did not obtain prior written consent from EMJ to do so. Beacon ultimately delivered a total of $170,431.56 in materials to the Project, which Citadel used in performance of the Subcontract. Beacon did not, however, receive payment in full.

---

[1] See *Duke Builders, Inc. v. Massey*, 351 Ga. App. 535 (831 SE2d 172) (2019).

[2] Viewed in the light most favorable to the non-movant, Citadel Siding and Distribution, LLC ordered the materials using an existing credit account for Citadel Roofing and Remodeling, LLC, which was a related, but separate entity. Because we conclude in Division 1 that the anti-assignment clause in the Subcontract applied to the order of materials in this case, we need not address whether the involvement of a separate entity had any effect.

Litigation began in March 2021 when Beacon filed a claim of lien in the amount of $137,293.82 against the Project for materials it supplied "for the improvement of . . . real estate furnished at the special instance of Citadel[.]" In its amended complaint against the Appellants,[3] Beacon asserted, in relevant part, a claim against the Appellants on their bond for the improvements to the Project.

The Appellants and Beacon filed cross-motions for summary judgment, which the trial court denied.[4] In its order, the court rejected the Appellants' argument that Beacon was barred from recovering because it was not an approved subcontractor. The trial court certified its decision for immediate review, and we granted the Appellants' application for interlocutory appeal.

In Georgia, "lien statutes in derogation of the common law must be strictly construed in favor of the property owner and against the materialman."[5] "The rationale is that there is usually no contract between the owner and supplier. Instead,

---

[3] Beacon originally sued the property owner, seeking to foreclose on its lien. After the Appellants filed a lien release bond, Beacon amended its complaint, substituting them as defendants for the property owner.

[4] Beacon did not file a cross-appeal.

[5] *U. S. Filter Distribution Group v. Barnett*, 273 Ga. 254, 255 (538 SE2d 739) (2000).

a materialman's lien effectively permits the transfer of liability from the person who actually contracted with the materialman for materials to be used in improving real estate to the owner of the improved property."[6]

Summary judgment is proper if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law[.]"[7] "Following a trial court's grant or denial of summary judgment, we conduct a de novo review, construing all reasonable inferences in the light most favorable to the nonmoving party.[8] "[T]he construction of a contract is also a question of law subject to de novo review."[9] With these principles in mind, we turn now to the Appellants' claims of error.

1. The Appellants argue that the trial court erred in denying their motion for summary judgment because Beacon did not qualify as a proper lien claimant under OCGA § 44-14-361 (a). We agree.

---

[6] (Citation and punctuation omitted.) *Bibler Masonry Contractors, Inc. v. J. T. Turner Constr. Co.*, 340 Ga. App. 490, 493 (798 SE2d 19) (2017).

[7] OCGA § 9-11-56 (c).

[8] *Edward N. Davis, P.C. v. Watson*, 346 Ga. App. 729 (814 SE2d 826) (2018).

[9] *Holt & Holt, Inc. v. Choate Constr. Co.*, 271 Ga. App. 292 (609 SE2d 103) (2004).

The anti-assignment clause (Section 6 (b)) in the Subcontract provided that "[Citadel] shall not *assign, subcontract or otherwise delegate* any portion of the [Subcontract] or the Work, including any proceeds from, or any interest therein, without the prior written consent of [EMJ]."[10] The following subsection (Section 6 (c)) in the Subcontract provides:

> If requested by [EMJ], [Citadel] shall submit for its approval a list of any sub-subcontractors and suppliers that [Citadel] intends to engage for a portion of the Work. Failure of [EMJ] to object to a proposed sub-subcontractor or supplier shall not constitute a waiver of any of the requirements of this Agreement. In the event [EMJ] approves the use of a sub-subcontractor (defined as a person or entity that has a direct or indirect contract with [Citadel] to perform a portion of the Work), [EMJ], by an appropriate written agreement, the form of which shall be subject to [EMJ's] approval, shall require each sub-subcontractor to assume all those obligations and responsibilities of [Citadel] under the [Subcontract.] [Citadel] shall further require each of its sub-subcontractors to acknowledge and agree that in the event [EMJ] requires [Citadel] to assign the sub-subcontract, sub-subcontractor shall continue to perform its portion of the Work without interruption.

---

[10] (Emphasis supplied.)

In the Subcontract, Citadel "agree[d] to deliver, *furnish*, install, and pay for all labor, *materials*, and equipment necessary for the complete execution of the Work," which was described generally as "Siding, Stucco & Windows."[11] A "Scope of Work" exhibit defined "the Work" more specifically and required Citadel to "execute the following portion of the Work described[,] including all labor, *materials*, equipment, services, superintendence, and other items required to complete such portion of the work[.]"[12] The Scope of Work included a non-exhaustive list of items that Citadel was required to "[f]urnish and install" as part of the Subcontract.

OCGA § 44-14-361 (a), which governs the creation of liens, provides, in relevant part, that "[a]ll contractors, all subcontractors and all materialmen furnishing material to subcontractors, and all laborers furnishing labor to subcontractors, materialmen, and persons furnishing material for the improvement of real estate" shall have a special lien on the real estate for which they furnish labor, services or materials.[13] Subsection (b) explains that the lien "may attach to the real estate of the

---

[11] (Emphasis supplied.)

[12] (Emphasis supplied.)

[13] OCGA § 44-14-361 (a) (2).

owner for which the labor, services, or materials are furnished if they are furnished at the instance of the owner, contractor, or some other person acting for the owner or contractor[.]"

Here, Beacon did not provide materials at EMJ's instance or at the instance of someone acting on its behalf, including Citadel, because the anti-assignment clause in the Subcontract prohibited the delegation of any of the "Work." More specifically, the Subcontract required Citadel to obtain EMJ's prior written approval to "subcontract . . . or otherwise delegate" the "furnish[ing]" of materials for Beacon to have an enforceable lien under OCGA § 44-14-361. Because Citadel failed to do so before ordering the materials from Beacon, Beacon's lien did not attach.

In *Benning Construction Co. v. Dykes Paving & Construction Co.*, our Supreme Court ruled that a material supplier (Dykes Paving) could not assert a lien claim against the general contractor (Benning Construction Company) because there was a break in the chain of contracts between the general contractor and the supplier.[14] In that case, Benning had subcontracted with Scarboro Paving Company to perform the paving, curb, and gutter work associated with an office and warehouse project;

---

[14] 263 Ga. 16, 18-19 (426 SE2d 564) (1993).

Scarboro then subcontracted with Lanier Paving Company to install the asphalt; and Lanier obtained materials it needed from Dykes Paving.[15] The Court held:

> [T]he contract between Scarboro and Lanier was not authorized by Benning . . . and was, in fact, in violation of the anti-assignment clause contained in the contract between Benning and Scarboro. Therefore, the contract between Scarboro and Lanier was not in the direct chain of contracts leading to the prime contractor, nor were the materials provided by [Dykes Paving] to Lanier furnished at the instance of the owner, contractor, or some person acting for the owner or contractor.[16]

We recognize that *Dykes Paving* is factually distinguishable in that the break in the line of contracts there occurred between two subcontractors (Scarboro and Lanier), rather than between the subcontractor and its material supplier (Lanier and Dykes Paving).[17] In that context, the Supreme Court held that "[a]bsent proof of a contractual relationship, either directly or through a chain of contracts, between the owner of the property and the person to whom the materials are furnished, a lien

---

[15] Id. at 18.

[16] (Citations and punctuation omitted.) 263 Ga. at 18.

[17] *Dykes Paving,* 263 Ga. at 18.

created under OCGA § 44-14-361 et seq. will not attach."[18] While there is a "direct chain of contracts" between the party that actually installed the siding and the prime contractor[19] in this case, we conclude that this distinction is without a difference. The fact remains that there is a break in the line of contracts.

Here, Beacon's lien claim is based on its contention that it furnished materials to "some other person acting for" EMJ.[20] Under the plain language of the anti-assignment clause in the Subcontract,[21] Beacon can not establish "a chain of contracts" leading to EMJ because the record is undisputed that Citadel did not obtain prior approval to "assign, subcontract or otherwise delegate" the furnishing of materials.

The trial court noted the Appellants' argument that the word "furnish" in the Subcontract contemplated that Citadel either had to provide the materials without purchasing them from a supplier or get EMJ's approval to "subcontract" that scope

---

[18] Id. at 18-19.

[19] *Dykes Paving*, 263 Ga. at 18.

[20] See OCGA § 44-14-361 (b).

[21] See *HA&W Financial Advisors, LLC v. Johnson*, 336 Ga. App. 647, 655 (3) (782 SE2d 855) (2016).

of work in order to order materials from a supplier. The trial court found this "interpretation of 'furnish' illogical because it is incongruous with Section 6 (c) [of the Subcontract], which contemplates the existence of suppliers."

There is no ambiguity, however, in Section 6 (b)'s requirement that Citadel obtain EMJ's prior written consent before delegating any portion of the "Work," which specifically included furnishing materials.[22] Thus, no construction is required or even permissible.[23] This interpretation of subsection (b) harmonizes[24] with Section 6 (c), which requires Citadel, upon request, to submit for approval a "*list* of any sub-subcontractors and suppliers that [Citadel] *intends* to engage."[25] Because Beacon's

---

[22] See OCGA § 13-2-2 (4) ("[T]he whole contract should be looked to in arriving at the construction of any part).

[23] *HA&W Financial Advisors*, 336 Ga. App. at 655 (3) ("[C]ontracts must be construed to give effect to the parties' intentions, which must whenever possible be determined from a construction of the contract as a whole. Whenever the language of a contract is plain, unambiguous, and capable of only one reasonable interpretation, no construction is required or even permissible, and the contractual language used by the parties must be afforded its literal meaning.") (citation and punctuation omitted).

[24] See *Horwitz v. Weil*, 275 Ga. 467, 468 (569 SE2d 515) (2002) ("The contract is to be considered as a whole, and each provision is to be given effect and interpreted so as to harmonize with the others.") (citation and punctuation omitted).

[25] (Emphasis supplied.)

lien did not attach under OCGA § 44-14-361 (b), the trial court erred in denying the Appellants' motion for summary judgment.

2. In light of our conclusion in Division 1, supra, we need not reach the Appellants' remaining claims of error.

*Judgment reversed. Doyle, P. J., and Hodges, J., concur.*