A93A1341. WEYANT v. MacINTYRE.
(438 SE2d 640)

</div>

SMITH, Judge.

Plaintiff and defendant are attorneys and the shareholders in MacIntyre and Weyant, a professional corporation engaged in the practice of law. Because of disputes which arose between them in the latter part of 1989 and early 1990, the corporation ceased doing business in February 1990. However, it continued in existence and had not been dissolved at the time of the proceedings below.

Plaintiff Weyant brought suit in the Superior Court of Fulton County seeking an accounting and distribution of fees collected by the professional corporation. Defendant MacIntyre answered, stating as his first defense that the shareholders' agreement, entered into in December 1983, contained an arbitration clause for "a deadlock as to any proposed Company action."

MacIntyre moved to compel arbitration, and Weyant moved to enjoin arbitration. The trial court denied Weyant's motion and granted MacIntyre's motion to compel arbitration. Weyant's application for interlocutory review of the trial court's order was granted, and this appeal followed. See *Phillips Constr. Co. v. Cowart Iron*

*Works*, 250 Ga. 488, 489 (299 SE2d 538) (1983).

1. Appellant contends that the Georgia law governing arbitration, as currently constituted, is inapplicable to this case. In 1988, the General Assembly extensively revised the statutory provisions governing arbitration, repealing the existing common-law arbitration and construction contract arbitration statutes and enacting the "Georgia Arbitration Code," OCGA § 9-9-1 et seq. The stated intention of the General Assembly in revising the Arbitration Code was to extend the enforcement of arbitration in Georgia from construction contracts to all contracts in which the parties have agreed to arbitration in writing. Ga. L. 1988, p. 903 et seq. The cases cited by Weyant disapproving or refusing to compel arbitration predate the amendment of the Arbitration Code and are not applicable here. As this court observed in *Freeman v. C. W. Redfern Enterprises*, 182 Ga. App. 205, 207 (3) (355 SE2d 79) (1987), "[t]he General Assembly has established the public policy of this State with regard to the enforceability of arbitration agreements" (construing former construction contract arbitration code, OCGA § 9-9-80 et seq.).

By its terms, OCGA § 9-9-2 (a) applies to "agreements specified in subsection (b) of this Code section made on or after July 1, 1988, *and to disputes arising on or after July 1, 1988*, in agreements specified in subsection (c) of this Code section." (Emphasis supplied.) OCGA § 9-9-2 (c) states: "This part shall apply to all disputes in which the parties thereto have agreed in writing to arbitrate and shall provide the exclusive means by which agreements to arbitrate disputes can be enforced, except the following. . . ." Subsection (c) then provides ten exceptions, which Weyant has not raised and which do not appear applicable to the facts in the record.

Although the shareholders' agreement in this case was executed in 1983, it contains a specific, written agreement to arbitrate, as contemplated by OCGA § 9-9-2 (c). The dispute that resulted in this litigation arose in 1990, or in mid-1989 at the earliest, and is therefore a dispute "arising on or after July 1, 1988" as provided for in the Code. The parties agreed in writing to arbitrate, and they are bound by the provisions of OCGA §§ 9-9-2 and 9-9-3 to do so.

2. Weyant contends that the motion to compel arbitration should not have been granted, because the provisions of the Georgia Arbitration Code were thereby applied retroactively to a contract executed in 1983, in violation of Ga. Const., Art. I, Sec. I, Par. X. In enacting the revised Arbitration Code, the General Assembly clearly contemplated its application to disputes arising *after* the effective date on contracts entered into at an earlier date. See OCGA § 9-9-2 (a). The Arbitration Code in this context simply aids enforcement of a remedy already agreed upon by the parties in disputes that arise after the effective date of the law. Nor does the Arbitration Code provide a new

remedy, or impair any obligation under the contract; instead, it enforces the existing agreement and obligation of the parties as originally drafted.

"Generally statutes prescribe for the future and that is the construction to be given unless there is a clear contrary intention shown. [Cits.] On the other hand, where a statute governs only procedure of the courts . . . it is to be given retroactive effect absent an expressed contrary intention. [Cits.] . . . Substantive law is that law which creates rights, duties, and obligations. Procedural law is that law which prescribes the methods of enforcement of rights, duties, and obligations. [Cits.]" *Polito v. Holland*, 258 Ga. 54, 55, (2, 3) (365 SE2d 273) (1988). Assuming without deciding that statutory enforcement of a remedy originally agreed upon by the parties to a contract is in some sense retroactive, it is nonetheless permissible as a procedural measure, and not a violation of the Georgia Constitution. The trial court properly applied the provisions of OCGA § 9-9-1 et seq. to the contract in this action.

3. Weyant also contends that MacIntyre waived the provisions of the Arbitration Code by filing a separate lawsuit in the State Court of DeKalb County. That suit is an action on a note endorsed by Weyant individually, and was filed after Weyant brought the action which is the subject of this appeal.

A party may waive the arbitration provisions of a contract by taking legal action inconsistent with arbitration. *Tillman Group v. Keith*, 201 Ga. App. 680, 681 (2) (411 SE2d 794) (1991). However, in those cases where a waiver was held to have occurred, the party seeking to rely upon an arbitration clause did not promptly invoke or seek to enforce the clause. See, e.g., *Tillman*, supra (appellant litigated claim to judgment without ever moving to compel arbitration or to stay proceedings pending arbitration); *Nat. Parents' Resource &c. v. Peachtree Hotel Co.*, 201 Ga. App. 637, 638 (2) (411 SE2d 884) (1991) (appellant defended on the merits and litigated case without moving to compel or to stay proceedings).

In this case, contrary to Weyant's assertion, MacIntyre made known his intention to rely upon the arbitration clause as early as February 1990. He attempted to select an arbitrator or arbitrators in accordance with the clause, apparently without success. In July 1990, he made formal demand for arbitration via certified mail. Moreover, when Weyant filed this action, MacIntyre asserted the arbitration clause in his answer and promptly moved to compel arbitration pursuant to OCGA § 9-9-6. Nor is this a case in which MacIntyre himself initiated legal action and then belatedly attempted to invoke arbitration. Compare *Taft v. Burttram*, 254 Ga. 687, 688, n. 1 (333 SE2d 585) (1985). Only after Weyant filed his complaint did MacIntyre bring the DeKalb County action.

Under the former construction contract arbitration code, this court has held that a party seeking arbitration could pursue other legal remedies without waiving the right to proceed to arbitration. In *H. R. H. Prince LTC. Faisal M. Saud v. Batson-Cook Co.*, 161 Ga. App. 219, 221 (3b) (291 SE2d 249) (1982), appellant contended that appellee had waived its right to arbitrate the dispute by filing a counterclaim seeking foreclosure of a materialmen's lien. This court held that a party "is entitled to protect its rights to a materialmen's lien . . . by filing a petition to foreclose said lien at the same time it is pursuing its arbitration rights under the contract." Id.

By analogy, MacIntyre is entitled to protect his rights in a promissory note by filing a separate action at law, without thereby waiving his demand for arbitration in this action. As observed in *Batson-Cook* at 222, had the trial court stayed arbitration, MacIntyre would have been prepared and able to proceed with his claim on the note.

"Here, where [MacIntyre] consistently sought to enforce [his] right to arbitration under the contract, it is clear that [he] had no intention of waiving such a right. [Cit.] Had [MacIntyre] flagrantly disregarded arbitration as a contractual prerequisite, filed a claim . . . and a complaint . . . without attempting to enforce [his] arbitration rights, a waiver of the arbitration provisions of the contract may have occurred. [Cit.]" Id. at 221. Both before and after the filing of the complaint in this action, MacIntyre consistently asserted his right to arbitration and made it abundantly clear that he had no intention of waiving that right. Accordingly, the trial court did not err in granting MacIntyre's motion to compel arbitration.

4. Weyant also contends that the matters raised in this suit fall outside the scope of the arbitration agreement. However, Weyant's complaint below alleges that he is bringing this action individually as a shareholder, officer, and director and on behalf of the corporation, that he is seeking an accounting of corporate funds, that MacIntyre's alleged actions were taken in his capacity as a corporate officer and shareholder, and that Weyant seeks liquidation of and compensation for corporate assets and property. The shareholders are unable to agree upon the allocation of funds, the payment of corporate debts, or even the dissolution of the corporation. Under these circumstances, the shareholders are in deadlock with regard to almost any "proposed Company action" and thus are within the scope of the arbitration agreement.

5. Weyant's enumerations of error regarding the law applicable to dissolved corporations are without merit, because no evidence appears on the record of the dissolution of the corporation, and Weyant's counsel stated in open court that the corporation in this case was not dissolved.

*Judgment affirmed. Beasley, P. J., and Cooper, J., concur.*

Decided November 9, 1993 —
Reconsideration denied December 6, 1993 — 

Charles L. Jurjevich, for appellant.
Bondurant, Mixson & Elmore, Jeffrey O. Bramlett, Mary J. Bradbury, for appellee.