A08A2112, A08A2113. SOUTHERN TELECOM, INC. v. LEVEL 3 COMMUNICATIONS, LLC et al.; and vice versa.

(671 SE2d 283)

ANDREWS, Judge.

In response to a complaint filed by Southern Telecom, Inc. concerning two seven-year-old contracts, Level 3 Communications, LLC and Progress Telecom, LLC ("the defendants") moved to compel arbitration, and the trial court granted their motion in part. On appeal in Case No. A08A2112, Southern argues that the trial court erred in granting the defendants' motion; on cross-appeal in Case No. A08A2113, the defendants argue that the trial court erred when it held that their counterclaims were time-barred and when it stayed the arbitration as to Level 3. We affirm the trial court's grant of the defendants' motion to compel arbitration, vacate its denial of that motion as to the defendants' counterclaims pending further proceedings, and reverse its stay of arbitration as to Level 3.

"Georgia courts are required to uphold valid arbitration provisions in contracts." *Bishop Contracting Co. v. Center Bros.*, 213 Ga. App. 804, 805 (1) (445 SE2d 780) (1994). "The standard of review from the denial of a motion to compel arbitration is whether the trial court was correct as a matter of law." (Footnote omitted.) *D. S. Ameri Constr. Corp. v. Simpson*, 271 Ga. App. 825, 826 (611 SE2d 103) (2005). "Unless the parties clearly and unmistakably provide other-

---

wise," the question of arbitrability "is undeniably an issue for judicial determination." (Citations omitted.) *AT&T Technologies v. Communications Workers of America*, 475 U. S. 643, 649 (II) (106 SC 1415, 89 LE2d 648) (1986).

So viewed, the record shows that on November 28, 2000, Southern and Progress entered into a "Master Fiber Lease Agreement" leasing optical fibers and processing capacity, known as "collocation space," to Progress. The copy of the Master Agreement attached to Southern's complaint does not include the exhibit specifying the leased fibers and spaces. Exhibits to the embedded collocation space agreement, however, describe a set of fibers and spaces including (a) a 345-mile conduit from Atlanta to Jacksonville, Florida; (b) a three-mile loop in downtown Atlanta; (c) a seven-mile conduit in Jacksonville; (d) another 345-mile conduit from Jacksonville through Daytona Beach to Miami; (e) a 285-mile conduit from Miami to Tampa; and (f) a 153-mile conduit from Tampa to Daytona Beach. The Master Agreement also provided that "[t]he parties agree to submit any payment disputes to binding arbitration."

The next day, in a "Conduit and Optical Fiber Agreement," including another embedded collocation agreement, Southern sold or licensed the Atlanta-Jacksonville conduit and the downtown Atlanta loop previously leased to Progress under the Master Agreement to EPIK in exchange for EPIK's one-time payment of $13,637,663. Southern also gained various other rights including the use of 12 fibers and ownership of the Jacksonville conduit. The collocation agreement, the record copy of which is missing relevant attachments, also provided that Southern would pay monthly rent under two alternative formulas. Finally, the Conduit Agreement provided that "[a]ny dispute or disagreement arising between EPIK and Southern . . . shall be settled by arbitration."

On December 5, 2003, EPIK and other entities assigned their rights under the Conduit Agreement to Progress, which thus became both the lessee of the Tampa-Daytona sites under the Master Agreement and the lessor of the same sites under the Conduit Agreement.

On September 13, 2007, Level 3, the parent company of Progress, notified Southern that Level 3 had failed to bill Southern for the proper amount of fees due under the Conduit Agreement in the amount of $5,668,494.50; that Level 3 would "exercise its rights to offset [its] current payments[ ] against this amount until such time as the past due amount is paid in full"; and that Level 3's future invoices would reflect an "accurate monthly fee" of $122,450.

In December 2007, Southern filed this action against Level 3 and Progress for breach of the Master Agreement, alleging that Level 3 had stopped making payments on November 1, 2007. After moving

for arbitration, the defendants answered and counterclaimed for breach of the Conduit Agreement.

The defendants' answer denied that Level 3 was a party or assignee of the Agreement, admitting only that it had made certain "payments to Southern under the Agreement on behalf of Progress." The counterclaims asserted that Southern had never paid rent for the Tampa-Daytona sites and that because Southern had purported to lease certain rights in the Tampa-Daytona sites when it did not own them, Southern had overcharged the defendants by $19,734 a month from July 2001 to September 2007. The counterclaims also asserted that Southern was liable for rent concerning the Tampa-Daytona Beach sites, or, in the alternative, that the defendants were entitled to a setoff in the amount of any judgment entered against them.

The trial court ruled that because Southern's claims under the Master Agreement were "payment disputes," they were subject to arbitration under that agreement. The trial court held the counterclaims time-barred because they arose at the time the Conduit Agreement was executed. The court also stayed arbitration as to Level 3 because it was a party to neither agreement.

*Case No. A08A2112*

1. In five enumerations of error, Southern argues that the trial court erred when it granted in part the defendants' motion to compel arbitration. We disagree.

The Supreme Court of Georgia has described the task before a trial court enforcing an arbitration agreement as follows:

> Despite the existence of a valid arbitration agreement, a trial court must determine whether the claims covered by the agreement are actually arbitrable before submitting them to an arbitrator. In fulfilling this gatekeeping duty, the trial court "shall not consider whether the claim with respect to which arbitration is sought is tenable nor otherwise pass upon the merits of the dispute." OCGA § 9-9-4 (d). This does not mean, however, that a trial court is prohibited from considering certain procedural mechanisms that may eliminate substantive claims from consideration by an arbitrator, even though such mechanisms would effectively dispose of the underlying claims on the merits.

(Citations omitted.) *Bryan County v. Yates Paving & Grading Co.*, 281 Ga. 361, 362 (638 SE2d 302) (2006). Specifically, a trial court has the discretion to determine whether " 'a claim sought to be arbi-

trated would be barred by limitation of time had the claim sought to be arbitrated been asserted in court.' " Id., quoting OCGA § 9-9-5 (a).

(a) Citing federal authority, Southern argues that courts facing arbitration disputes must not look beyond the pleadings to determine whether a controversy is arbitrable. See, e.g., *Suburban Leisure Center v. AMF Bowling Products*, 468 F3d 523, 525 (8th Cir. 2006) (treating motion to compel arbitration as a motion to dismiss for failure to state a claim). The appeals before us demonstrate the folly of such an approach, which applies a familiar rule out of context.

A Georgia court reserves the power to examine the entire record, not to reach the underlying merits of the dispute, but to fulfill "its gatekeeping role to determine whether any arbitrable claim ha[s] been presented in the current action." *Bryan County*, 281 Ga. at 363 (trial court correctly applied res judicata analysis to claim). Though the two agreements at issue here have slightly different arbitration clauses, our reading of an incomplete record suggests that they concern the same set of fibers and spaces, thus belying Southern's characterization of them as "unrelated." The question of the parties' performance over the seven years between the agreements' execution and the outbreak of the current dispute will be critical for the factfinder, but cannot and should not be decided on the record before us.

(b) In four closely related assertions of error, Southern repeats its pleading that because the defendants repudiated the Master Agreement, they waived the arbitration provision in it as well. We disagree.

There can be no question of conventional waiver here, where the defendants moved for arbitration even before answering Southern's complaint and repeated the contention as a defense in their answer. See *Weyant v. MacIntyre*, 211 Ga. App. 281, 283 (3) (438 SE2d 640) (1993) (defendant did not waive arbitration when he "asserted the arbitration clause in his answer and promptly moved to compel arbitration"); compare *Griffis v. Branch Banking & Trust Co.*, 268 Ga. App. 588 (602 SE2d 307) (2004) (finding waiver where defendants asserted a counterclaim, engaged in extensive discovery, and waited nine months before asserting their right to arbitration). Instead, Southern must show that the defendants' course of conduct in September 2007 amounted to a repudiation of the Master Agreement as a matter of law. See *Roswell Properties v. Salle*, 208 Ga. App. 202, 203 (1) (430 SE2d 404) (1993) (party waived a contractual provision to arbitrate when that same party repudiated the contract itself), abrogated on other grounds, *Golden Peanut Co. v. Bass*, 249 Ga. App. 224 (547 SE2d 637) (2001).

272

Like the question of the relationship between the two agreements, the question whether the defendants repudiated the Master Agreement so as to waive their right to enforce its arbitration clause cannot be decided on the scant record before us. Judging from its September 13 letter alone, Level 3 was seeking to enforce the Conduit Agreement, and not to repudiate the Master Agreement, when it notified Southern of additional fees due under the former. The fact that Level 3's construction of the Conduit Agreement reduced its payments under one or both agreements, or even resulted in a net charge to Southern, does not disturb the trial court's conclusion that the parties had become embroiled in an arbitrable "payment dispute" concerning the properties at issue in both agreements. Because any factual determinations bearing on this result must await the judgment of the arbitrator, the trial court did not err when it granted the defendants' motion to compel arbitration. See *D. S. Ameri*, 271 Ga. App. at 827 (trial court erred when it denied defendants' motion to compel arbitration; plaintiffs' assertion of a rescission claim did not create a substantial issue concerning the validity of an unambiguous arbitration clause in the contract sought to be rescinded).

*Case No. A08A2113*

2. In the cross-appeal, the defendants argue that the trial court erred when it held their counterclaims time-barred. We order further proceedings on the question.

Under OCGA § 9-9-5 (a), a trial court has discretion "in deciding whether to apply [a] bar" of limitation of time. See *Bryan County*, 281 Ga. at 362-363 (noting trial court's authority to determine whether claim subject to arbitration would be time-barred); see also OCGA § 9-9-6 (a) (if a claim "is barred by limitation of time, the court shall summarily hear and determine that issue and, accordingly, grant or deny the application for an order to arbitrate"). The trial court was thus correct to consider whether the counterclaims were time-barred.

OCGA § 9-3-24 provides that "[a]ll actions upon simple contracts in writing shall be brought within six years after the same become due and payable." Both agreements contained an identical 12-month limitation period on claims, however:

A party must assert, in writing, any claim . . . within 12 months of the sooner of the date on which the party bringing the claim becomes aware, or should have become aware, of the existence of the claim. Failure to assert a claim within such period will constitute a waiver of the claim.

Limitation clauses reducing the time permitted to assert claims under a written contract from six years to twelve months are enforceable in Georgia. See *Auto-Owners Ins. Co. v. Ogden*, 275 Ga. 565, 566 (1) (569 SE2d 833) (2002). Even 30-day contractual limits on arbitrable claims have been upheld. See *Holt & Holt, Inc. v. Choate Constr. Co.*, 271 Ga. App. 292, 295-296 (2) (609 SE2d 103) (2005) (affirming plaintiff's grant of motion to stay arbitration where defendant and counterclaimant failed to observe 30-day contractual bar on arbitrable claims).

The trial court held the counterclaims time-barred because the Conduit Agreement was entire rather than severable. See OCGA § 13-6-14 ("If a contract is entire, only one action may be maintained for a breach thereof; but, if it is severable or if the breaches occur at successive periods in an entire contract, an action will lie for each breach."); see also *Baker v. Brannen/Goddard Co.*, 274 Ga. 745, 748 (2) (559 SE2d 450) (2002) ("When the statute of limitations begins running on a breach of contract claim depends on whether the agreement is entire or divisible.") (citation omitted). In *Baker*, the Supreme Court of Georgia held that a contract obligating a defendant to pay commissions for the plaintiffs' procurement of a tenant was not entire "because the contractual consideration at issue is not a single sum certain which remained unpaid after a definite due date." Id. at 748. Rather, and because the defendant was required to pay the commission on a monthly basis, the statute of limitation began to run at the time each payment was due. Id. at 749.

Here, the Conduit Agreement apparently established Southern's obligation to pay monthly rent and provided that it could request additional services at an additional charge. Despite these provisions, the trial court held that there was "only one consideration" in the Conduit Agreement and that there was "a fixed term and a fixed payment for the provision of the service." As Southern concedes, this finding was erroneous. The record shows only that Progress learned of Southern's nonpayment for the Tampa-Daytona sites "[a]t some point" after Progress gained rights to the Conduit Agreement in December 2003, and contains no evidence concerning the course of conduct between the parties since that time. And the trial court acknowledged the interrelationship of the claims and counterclaims when it held that the latter should not "be litigated on [their] own merits *except as a defense to Southern's claim*." (Emphasis supplied.)

In short, nothing in the record before us permits a conclusion that the parties ignored or otherwise negated the provisions of the Conduit Agreement so as to render it severable, or that the defendants were actually aware or should have become aware of their counterclaims at any particular time before September 2007. We therefore vacate that portion of the trial court's order holding the

YALE LAW LIBRARY

counterclaims time-barred and remand the case for further proceedings, including findings of fact, on the issue.

3. The trial court erred when it stayed arbitration as to Level 3. OCGA § 9-9-6 (e) provides that a court may consolidate arbitration proceedings when:

(1) *Separate arbitration agreements* or proceedings exist between the same parties *or one party is a party to a separate arbitration agreement or proceeding with a third party*;

(2) The disputes *arise from the same transactions* or series of related transactions; *and*

(3) There is *a common issue or issues of law or fact* creating the possibility of conflicting rulings by more than one arbitrator or panel of arbitrators.

(Emphasis supplied.) Although there is not yet any substantial danger of "conflicting rulings by more than one arbitrator" in this case, Level 3 is the parent company of Progress and made payments on Progress's behalf under the Conduit Agreement, and the relationships of Level 3 and Southern on the one hand and Progress and Southern on the other share common issues of fact. We thus conclude that Level 3 should have been included in the proceedings to come. See, e.g., *D. S. Ameri*, 271 Ga. App. at 827.

*Judgment affirmed in Case No. A08A2112. Judgment vacated in part and reversed in part, and case remanded in Case No. A08A2113. Ruffin, P. J., and Bernes, J., concur.*

DECIDED DECEMBER 15, 2008.

*Troutman Sanders, Benjamin A. Gastel, Robert P. Williams II, Benjamin L. Young*, for appellant.

*Mozley, Finlayson & Loggins, Christopher N. Shuman, Lisa R. Richardson, Fried, Rogers & Goldberg, Rebecca J. Schmidt*, for appellees.