A10A2127. HEWITT ASSOCIATES, LLC v. ROLLINS, INC.
(708 SE2d 697)

MILLER, Presiding Judge.

A jury found in favor of Rollins, Inc. on its claims for breach of contract and attorney fees against Hewitt Associates, LLC ("Hewitt"), its former employee benefits plan administrator. The jury also ruled against Hewitt on its quantum meruit counterclaim. Following the trial court's entry of judgment on the verdict and denial of Hewitt's motions for new trial and judgment notwithstanding the verdict, Hewitt appeals, complaining of a variety of errors below. Specifically, Hewitt contends that Rollins's contract claim was time-barred, that the trial court should have given the jury a special verdict form, that Rollins was not entitled to attorney fees, that the trial court charged the jury to use an incorrect percentage in calculating prejudgment interest, and that the jury verdict was inconsistent. Because these claims of error lack merit, we affirm.

Where a jury returns a verdict and it has the approval of the trial judge, the same must be affirmed on appeal if

---

there is any evidence to support it, as the jurors are the sole and exclusive judges of the weight and credit given the evidence. The appellate court must construe the evidence with every inference and presumption in favor of upholding the verdict, and after judgment, the evidence must be construed to uphold the verdict even where the evidence is in conflict.

(Citation and punctuation omitted.) *Harris v. Tutt*, 306 Ga. App. 377, 378 (1) (702 SE2d 707) (2010). So viewed, the record shows that, from 1995 to late 2003, Northern Trust Retirement Consulting, LLC ("Northern Trust") served as the administrator of Rollins's employee retirement plans. In 2001, Rollins and Northern Trust signed a multi-year contract to govern their relationship ("the 2001 Agreement"). The 2001 Agreement provided, in relevant part, that Rollins would pay Northern Trust a monthly fee for its services. Northern Trust, in turn, would apply toward Rollins's fee any "fund fees" that Northern Trust received from investment funds for its administrative services.[1] The 2001 Agreement also contained a limitations clause providing that any claims arising out of the agreement had to be brought within 16 months "from the date on which the cause of action first arose."

In 2003, Hewitt purchased Northern Trust's assets, assumed the 2001 agreement, and took over as administrator of Rollins's plan. Hewitt used a software platform for delivering its services that was incompatible with the platform Northern Trust had used. Hewitt offered to transition Rollins to its platform at no charge in hopes that Rollins would sign a multi-year contract extension. But the parties could not agree on the terms of the extension, and Rollins never signed the proposed agreement. Nevertheless, Hewitt continued to act as Rollins's plan administrator until 2006, when Rollins terminated Hewitt's services. It is undisputed that Hewitt did not credit Rollins for the fund fees it received while acting as Rollins's plan administrator.

In August 2006, Rollins sued Hewitt for breach of contract, seeking to recover the plan fees that Hewitt had failed to credit. Rollins also sought recovery for attorney fees and litigation expenses under OCGA § 13-6-11. Hewitt counterclaimed, seeking to recover for Rollins's refusal to sign a new contract. Hewitt asserted claims for breach of contract, promissory estoppel, and quantum meruit. The parties filed cross-motions for summary judgment. The trial

---

[1] According to a Hewitt witness, such fees are commonly paid to plan administrators by mutual funds in which the plan is invested and for which the plan administrator performs certain record keeping tasks.

court granted summary judgment to Rollins on Hewitt's claims for breach of contract and promissory estoppel, but denied summary judgment on all other claims. Hewitt appealed to this Court from the grant of partial summary judgment to Rollins, but we affirmed. *Hewitt Associates, LLC v. Rollins, Inc.*, 294 Ga. App. 600 (669 SE2d 551) (2008).

The case returned to the trial court and was tried to a jury. At the close of the evidence, Hewitt moved for a directed verdict on Rollins's claims, but the court denied the motion. The jury then awarded Rollins $820,737 in damages on its breach of contract claim, as well as $357,000 in attorney fees and litigation costs. The jury awarded nothing to Hewitt on its claims. After the trial court entered judgment on the jury verdict, Hewitt filed motions for judgment notwithstanding the verdict and for new trial. The trial court denied the motions, and this appeal followed.

1. Hewitt argues that the trial court should have granted judgment in its favor on Rollins's breach of contract claim because the claim was time-barred under the 16-month statute of limitation in the 2001 Agreement. Specifically, Hewitt contends that Rollins should have realized when it received its first bill from National Trust back in 2001 that it was not receiving credit for any fund fees, yet Rollins did not file this action until August 28, 2006. Thus, according to Hewitt, Rollins may only seek payment of those fund fees that were due on or after April 28, 2005 — i.e., within 16 months of the filing of the action.

Rollins concedes that contractual periods of limitation are generally enforceable under Georgia law, see *Southern Telecom v. Level 3 Communications, LLC*, 295 Ga. App. 268, 273 (2) (671 SE2d 283) (2008), and that if applicable, the limitation period at issue here would bar at least some of its claims against Hewitt. Rollins contends, however, that the limitation period was tolled by Hewitt's fraudulent conduct, which hindered Rollins from discovering the breach of contract. Rollins claims that Hewitt actively camouflaged its breach of contract by concealing its receipt of fund fees from Rollins until Rollins finally learned the truth in August 2005. Thus, Rollins maintains that its cause of action did not accrue until August 2005, and that it timely filed this action approximately 12 months later.

Under OCGA § 9-3-96, if the defendant is "guilty of a fraud by which the plaintiff has been debarred or deterred from bringing an action, the period of limitation shall run only from the time of the plaintiff's discovery of the fraud." Hewitt argues that the fraud exception does not apply here for several reasons, none of which has merit.

(a) First, Hewitt contends that Rollins failed to plead fraud with

the requisite particularity. See OCGA § 9-11-9 (b). But in the consolidated pretrial order, which was signed by the trial judge and explicitly stated that it superseded the pleadings, Rollins asserted that Hewitt falsely stated that there were no fund fees to be credited to Rollins, and Rollins provided details of the dates and contents of Hewitt's alleged misrepresentations. Thus, contrary to Hewitt's contention, Rollins did adequately plead its fraud defense.

(b) Second, Hewitt asserts that there was no evidence that it committed fraud. To establish fraudulent concealment under OCGA § 9-3-96 sufficient to toll a limitation period, the plaintiff must prove that (1) the defendant committed actual fraud involving moral turpitude, (2) the fraud concealed the cause of action from the plaintiff, and (3) the plaintiff exercised reasonable diligence to discover its cause of action within the applicable limitation period. *Columbia County v. Branton*, 304 Ga. App. 149, 153 (2) (695 SE2d 674) (2010). If a confidential relationship exists between plaintiff and defendant, there is "a greater duty on a defendant to reveal what should be revealed, and a lessened duty on the part of a plaintiff to discover what should be discoverable through the exercise of ordinary care." (Citation omitted.) *Cochran Mill Assoc. v. Stephens*, 286 Ga. App. 241, 245 (1) (648 SE2d 764) (2007).

Rollins presented evidence that it had a confidential relationship with Hewitt that entitled it to "conclusively rely" on writings and other communications from Hewitt. Rollins also presented evidence that Hewitt knew Rollins was entitled to the fund fee offsets, that Hewitt alone knew how much it had received in fund fees, and that Hewitt failed to disclose that information even after inquiries from Rollins.[2] Finally, Rollins presented evidence that Hewitt eventually admitted in August 2005 that it had retained *some* fund fees, though it did not disclose the full amount of those fees until after this lawsuit was filed.

Hewitt claims that Rollins has read too much into the evidence, discerning fraud where there was none. But because fraud is subtle and difficult to prove directly, it may be established by "slight circumstances." *Weatherly v. Weatherly*, 292 Ga. App. 879, 883 (2) (665 SE2d 922) (2008). "Moreover, it is peculiarly the province of the jury to pass on these circumstances showing fraud." (Punctuation

---

[2] For example, an internal Hewitt e-mail from June 2003 noted that Rollins had hired an outside consultant to evaluate the possibility of fee reductions, but Hewitt had "held her at bay." Moreover, a Rollins employee testified that Hewitt told her in August 2004 that it had not received enough money from fund fees to cover the $8,000 necessary for an annual plan enrollment kit – even though Hewitt had actually received amounts far in excess of $8,000. In February 2005, Rollins asked Hewitt for a current fee schedule, but the document that Hewitt supplied omitted any mention of the fund fees Hewitt was receiving.

and footnote omitted.) *Kilroy v. Alpharetta Fitness*, 295 Ga. App. 274, 279 (1) (671 SE2d 312) (2008). The evidence presented at trial authorized the jury to find that Hewitt committed fraud. See *PricewaterhouseCoopers, LLP v. Bassett*, 293 Ga. App. 274, 278 (2) (666 SE2d 721) (2008).

(c) In addition, Hewitt asserts that Rollins did not exercise due diligence to discover its cause of action. According to Hewitt, Rollins was put on notice of the existence of its claim because it should have seen from its invoices that it was not being credited for the fund fees. The 2001 Agreement required Hewitt to "reflect" the fund fee offsets in its invoices to Rollins, and it further provided that "[s]tatements of amounts retained by [Hewitt] (if applicable) are available upon request." Hewitt's assertions are unavailing.

As Rollins points out, if the contract had required Hewitt to itemize the fund fee offsets in its invoices, then there would have been no need for a separate provision requiring Hewitt to disclose those amounts upon request. Consistent with this observation, Rollins's assistant benefits director, who reviewed Hewitt's invoices, testified that she assumed that Hewitt, in its role as record keeper, was accurately crediting Rollins for the fund fees, and she did not necessarily expect to see such credits appear as separate line items on the invoices. Thus, there was evidence that a close scrutiny of the invoices would not have disclosed Rollins's cause of action. Moreover, Rollins presented evidence that Hewitt "held at bay" the consultant it hired and vastly understated the amount of fund fees available. This evidence authorized the jury to find that Hewitt's fraud hindered Rollins from discovering its cause of action until August 2005. Accordingly, the trial court did not err by failing to rule that Rollins's breach of contract claim was time-barred as a matter of law.

2. Hewitt contends that the trial court erred by refusing to use a special verdict form that would have required the jury to make a specific finding as to the date that Rollins should have known of Hewitt's breach of contract. Without this verdict form, Hewitt asserts, the jury "completely ignored the statute of limitations issue." "The form of a verdict and the submission of a special verdict are within the discretion of the trial court, and, absent an abuse of that discretion, the court's choice will not be overturned." (Punctuation and footnote omitted.) *Certain Underwriters at Lloyd's of London v. Rucker Constr.*, 285 Ga. App. 844, 851-852 (4) (648 SE2d 170) (2007). Hewitt has failed to show any abuse of discretion here. And because the trial court charged the jury on Hewitt's limitations defense, there is no basis for Hewitt's contention that the jury ignored that issue.

3. Hewitt claims that the trial court erred by denying its motions for judgment as a matter of law on Rollins's claim for attorney fees

and litigation expenses. Under OCGA § 13-6-11, litigation expenses are recoverable as contract damages where the plaintiff pleads them and "where the defendant has acted in bad faith, has been stubbornly litigious, *or* has caused the plaintiff unnecessary trouble and expense." (Emphasis supplied.) Questions concerning bad faith under this statute are generally for the jury to decide, and the trial court may grant judgment as a matter of law on such issues "only in the rare case where there is absolutely no evidence to support the award of expenses of litigation. . . ." (Punctuation and footnote omitted.) *Mariner Health Care Mgmt. Co. v. Sovereign Healthcare, LLC*, 306 Ga. App. 873, 877 (3) (703 SE2d 687) (2010). As discussed in Division 1, there was evidence that Hewitt acted in bad faith. It follows that the trial court did not err by denying Hewitt's motions for judgment as a matter of law on Rollins's claim for litigation expenses. See *Harris v. Tutt*, 306 Ga. App. 377, 380 (3) (702 SE2d 707) (2010).

4. Hewitt complains that the trial court erred by charging the jury that it could award interest on any damages "at the rate not in excess of one and one-half percent per month." The 2001 Agreement provided for an interest charge of one and one-half percent per month on all balances outstanding for more than 30 days. Although contractual interest rates are generally enforceable, "[a] contract that specifies an interest rate for one purpose does not automatically set the rate for other purposes." *Teachers Retirement System of Ga. v. Plymel*, 296 Ga. App. 839, 848 (4) (676 SE2d 234) (2009). Hewitt insists that the interest rate specified in the 2001 Agreement applied only to fees that were due to Hewitt under the contract. The agreement, however, contemplates a lawsuit by either party, and it states without qualification that the contractual interest rate is applicable to "all outstanding balances." Given this broad language, the trial court did not err by instructing the jury that it could apply that interest rate to an award of damages for Hewitt's breach of contract.

5. Finally, Hewitt argues that the trial court should have granted its motion for new trial because the jury verdict on Hewitt's counterclaims was inconsistent. The verdict form gave the jury the following options with respect to the counterclaim:

(d)  We, the jury, find for the Defendant and award damages in the amount of $_____, and

(e)  We, the jury, find for the Defendant and award attorney's fees and costs of litigation in the amount of $_____

- or

(f)  We, the jury, find for the Plaintiff.

There were no boxes or blank spaces to check in front of the letters. In rendering the verdict on the counterclaim, the jury filled in "$0" in the blank spaces beside the (d) and (e) options on the form. According to Hewitt, this meant that the jury concluded that Hewitt had prevailed on its quantum meruit and attorney fee claims, but was entitled to no relief — a result that Hewitt contends is inconsistent.

Although a verdict that is contradictory is void, "verdicts are to be reasonably construed and not avoided unless from necessity." *Docutronics, Inc. v. Reitman*, 235 Ga. App. 268, 269 (509 SE2d 348) (1998); see also OCGA § 9-12-4. Here, Rollins presented evidence that Hewitt's software platform was of no value to it. In fact, one Rollins employee likened the Hewitt platform to "a dry-rotted water hose and it springs a leak." In addition, there was evidence that Rollins had to expend funds to correct errors made by Hewitt. Thus, the verdict can be reasonably interpreted to mean that although Hewitt did perform work on Rollins's behalf, the work had no value to Rollins. See *Palmer v. Barnes*, 193 Ga. App. 105 (387 SE2d 44) (1989) (finding no inconsistency in jury verdict finding for plaintiff in tort action and awarding $0 in damages). Accordingly, the trial court did not err in denying Hewitt's motion for new trial.

*Judgment affirmed. Phipps, P. J., and McFadden, J., concur.*

### DECIDED MARCH 28, 2011.

*Greenberg Traurig, Thomas J. Mazziotti, Michael J. King*, for appellant.

*Bodker, Ramsey, Andrews, Winograd & Wildstein, Harry J. Winograd, Jessica J. Harper*, for appellee.