Lane *vs.* Morris.

---

No. 78.—Richard A. Lane, plaintiff in error, *vs.* Thomas Morris, defendant in error.

[1.] Under our judiciary, after a general demurrer has been filed and argued, and the judgment of the Court pronounced thereon, it is not proper to allow it to be withdrawn.

[2.] Where, from the inquiry which has been made, it is probable that a book of original entries has been lost or destroyed, and the party swears that it is not in his power, custody or control, secondary evidence is admissible.

[3.] Where stockholders in a bank are personally liable for the *ultimate* redemption of its bills; to a suit by a bill-holder against a stockholder, a plea that the bank has assets which have not been appropriated, without specifying what they are, is demurrable for uncertainty.

[4.] Where the charter of a bank renders the stockholders liable, after a transfer of stock, unless sixty days' notice of the sale is given in one of the public gazettes of the State, and provided the transfer is made six months before the failure of the corporation, all stockholders who have given notice in terms of the Act, are exempt, unless the failure occurs within six months thereafter. All other stockholders are liable for the redemption of the bills, whether they have transferred or not. This liability is not *primary* nor *total*, but *secondary* and *proportional*.

Lane *vs.* Morris.

[5.] The notice of the sale by the stockholder, need not specify the name of the purchaser.

[6.] A suspension and failure to pay specie on demand to bill-holders, generally, is sufficient to enable the bill-holder to sue. He need not prove a special demand in his case.

[7.] The right given the bill-holder to go upon the stockholder for the ultimate redemption of the bills, is independent of any claim upon the assets of the corporation—one which may be asserted directly in his own name, and which the assignee or receiver could not enforce, as it constitutes no part of the effects of the bank.

[8.] *Semble;* that where an action is founded on a Statute, the law deems it for this purpose a *specialty,* and consequently, the plea of the Statute of Limitations, as applicable to *notes,* cannot be supported.

Debt, in Muscogee Superior Court. Tried before Judge ALEXANDER, May Term, 1850.

This was an action by Richard A. Lane, as a holder of bank bills of the Planters & Mechanics' Bank of Columbus, against Thomas Morris, a stockholder in said Bank, to recover on his *pro rata* liability for the payment of the bills, under the following section of the charter.

"SEC. XI. The persons and property of the stockholders, shall be pledged and held bound in proportion to the amount of shares, and the value thereof, that each individual or company may hold in said bank, for the ultimate redemption of the bills or notes issued by said bank, in the same manner, as in common actions of debt, and no stockholder shall be relieved from such liability by sale of his stock, until he shall have caused to have been given sixty days' notice in some public gazette of this State."

The declaration alleged a judgment against the assignee of the bank, and a return of "*nulla bona.*" On the trial, defendant's counsel demurred to the declaration. The Court overruled the demurrer; whereupon, defendant moved to withdraw his demurrer. The Court granted the motion, and this is the first ground of error assigned.

Plaintiff's counsel then moved to strike out the 5th, 7th, 9th, 10th and 11th pleas of defendant, which were in substance, as follows: The 5th plea set forth, that if defendant ever was a stockholder, all his rights and liabilities, except so far as saved and reserved by statutory provision, had long since ceased and

been determined by the forfeiture of the charter of said bank, viz: on 13th June, 1843, as appears by the judgment of the Court declaring the forfeiture. The 7th plea set forth, that the bank "was not insolvent at the time the plaintiff commenced his action, and is not now insolvent, but that the same has property and assets, which have not been exhausted by the plaintiff, and that defendant, as stockholder, is not liable until such insolvency does actually exist."

The 9th plea was, that defendant was not one of the original stockholders and subscribers to the bank, but was the assignee of Hampton S. Smith, one of the original subscribers, who, upon the transfer, gave no notice of the sale.

The 10th plea was, that defendant was not a stockholder at the time the bills were issued, on which suit was brought, and that no notice of the transfer to the defendant had ever been given in any public gazette.

The 11th plea was substantially the same as the 9th and 10th.

The Court overruled the motion and sustained the pleas, and this decision is another ground of error assigned.

Defendant's counsel proposed to prove, by parol, the names of the original subscribers. The Court decided the book of minutes to be higher evidence. Defendant's counsel then proved by Wm. Dougherty, Esq. plaintiff's attorney, that he had the book in his office until the summer of 1849, when Dr. Flewellen called for it, with an order from the assignee of the bank, and obtained it; that he had traced it into the hands of Mr. Kemp, counsel for Dr. Flewellen, who said he had left it in the office of Col. Holt. Col. Holt proved that he had not seen it in his office, and knew it was not there. The assignee of the bank stated he had never seen it since delivered to Dr. Flewellen. Defendant stated it was not in his power, custody, or control, but that he had made no search or inquiry for it. The Court held the book sufficiently accounted for, and admitted the parol evidence, and this decision is assigned as a ground of error.

Counsel for the defendant then offered a public gazette published in the City of Columbus, showing the following notice:

"Notice.—I have transferred all of the stock I held in the Planters & Mechanics' Bank of Columbus, September 1st, 1841.

(Signed,) THOMAS MORRIS."

Objected to by plaintiff's counsel, as insufficient, in not stating to whom transferred.

The Court overruled the objection, and this decision is assigned as a ground of error.

The Court charged the Jury, that the plaintiff had mistaken his remedy, in bringing suit in his own name, but under the Acts of 1842 and 1843, the action ought and could only have been brought by the assignee of the bank.

This charge is assigned as a ground of error.

Plaintiff's counsel requested the Court to charge the Jury, that a suspension of payment, and a refusal by the bank to pay specie for their bills, when demanded, was a failure in contemplation of the following section of the charter:

"SEC. XVI. In case of a failure of said bank, all the stockholders who may have sold their stock at any time within six months prior to said failure, shall be liable in the same manner as if they had not sold their stock."

Which charge the Court refused to give, but charged the Jury, that either a general suspension of specie payments, or a failure to pay specie to any and every other person than the plaintiff, was not such a failure as contemplated by said section, and the plaintiff, to avail himself of that clause, must prove a demand for specie and a refusal to pay his claim.

Which charge and refusal to charge, are also assigned as grounds of error.

W. DOUGHERTY, for plaintiff in error, cited and commented on the following authorities:

*Bullard vs. Bell*, 1 *Mason*, 243.    *Angell & Ames*, 556, 8.    8 *Cowen*, 387.    *Castleman vs. Holmes*, 4 *J. J. Marsh.* 1.    *Bank of Poughkeepsie vs. Ibbotson*, 24 *Wend.* 473.    *Spier vs. Grant*, 16 *Mass.* 9.    *Hall vs. Carey*, 5 *Kelly*, 239.    8 *Wheat.* 75.    *Lumpkin et al. vs. Jones*, 1 *Kelly*, 27.    *The Commercial Bank of Natches vs. The State of Mississippi*, 6 *Smede & Marshall*, 599.

H. HOLT and JAS. JOHNSON, for defendant, cited and commented on the following authorities:

*Van vs. Grant*, 16 *Mass.* 476.    *Ib.* 9.    *Berry et al. vs. Mat-*

*thews et al.* 1 *Kelly,* 519.    *Angell & Ames,* 750.   2 *Kent,* 305 *to* 315.   3 *Burr.* 1866.   3 *T. R.* 199.   3 *Sm. & M.* 791.   8 *Peters,* 281.   10 *Paige's C. R.* 541.   7 *Ga. Rep.* 80.   10 *Metcalf,* 6.   5 *Ga. Rep.* 239, 486.   2 *McMullen,* 439.   6 *Ala.* (*N. S.*) 289.   1 *Kelly,* 27.   *She vs. Bloom,* 19 *John.* 477.   8 *Cow.* 391.   *Pendergrast vs. Foley,* 8 *Ga. Rep.* 1.   *Keaton vs. Greenwood, Ibid,* 97.

*By the Court.*—LUMPKIN, J. delivering the opinion.

This was an action of debt brought by Richard A. Lane, as the holder and owner of the bills of the Planters & Mechanics' Bank of Columbus, to the amount of $925, against Thomas Morris, as a stockholder in said bank, of one hundred and sixty-nine shares of the capital stock thereof, and seeking to make the defendant liable to the plaintiff (the bank being insolvent,) for such a proportion of his said debt, as the number of shares, so held by the said defendant, bears to the whole capital stock of said bank, which is a million of dollars.

[1.] The first assignment is, that the Court erred in allowing the defendant's counsel to withdraw the demurrer to the plaintiff's declaration, after the judgment of the Court was made thereon.

No authority was produced on the argument, settling what the practice is in this respect. I find, upon examination, that it has not been uniform. There are precedents both ways. Mr. *Sellon,* in his *Treatise-on Practice, page* 340, citing *Say.* 312, lays it down, that after argument, and even after the opinion of the Court has been pronounced on the demurrer, it is in its discretion to give leave to withdraw it. In *Ayrs vs. Wilson,* (*Douglas,* 385,) leave was granted to withdraw the demurrer and reply, on payment of costs. There are other cases, however, in the English books, in which it was refused. 1 *East,* 391. 1 *Burr.* 321. 2 *B. & P.* 482. 3 *B. & P.* 11, 12. In the United States Courts, it has been decided that an amendment to a plea may be allowed, after the plea has, on demurrer, been adjudged to be bad. 6 *Cranch,* 206. But whether, upon like principles, the demurrant would have leave to withdraw the demurrer, where a judgment against him has been pronounced, was not decided.

It is immaterial to the present case, whether the practice be established one way or the other. Upon principle, it would seem, that it ought not to be allowed under our system. The demurrer

denies, that by the law arising upon the facts charged in the declaration, any injury is done to the plaintiff, for which he is entitled to recover.   The judgment is as peremptory, and should be as conclusive, as if it had been rendered on a verdict found on an issue in fact.   To permit the defendant, then, to withdraw the demurrer, after a judgment has been pronounced against him, and interpose the same objection on a motion to arrest the judgment, is giving him an undue advantage, especially as an opportunity may be afforded the Court to correct its error, if any has been committed, on an application for a new trial.   Establish this practice, and the Court may, and probably will be called upon to decide the same issue in law three times in the same case.

[2.] The second assignment is, that the Court erred in permitting the defendant's counsel to give parol evidence of the contents of the minutes of the bank-book, without having sufficiently accounted for the loss or destruction of the original book of entries containing those minutes.

The object of the testimony sought to be introduced, was to prove who were the stockholders in the company.   I am not prepared to say that it was not competent to make this proof, independent of the book.   I am quite clear, however, that the absence of the book was sufficiently accounted for.   It is true, that the search for it was not made by the defendant ; still the inquiry which was instituted, created a strong probability that the book was lost or destroyed.   In addition to this, Morris swore that the book was not in his power, custody or control.

The third assignment is, that the Court erred in overruling the demurrer of the plaintiff to the 5th, 7th, 9th, 10th and 11th pleas, as set out in the record, and in allowing the defence set up therein.   It becomes necessary, of course, to examine the several matters put in issue by these pleas.   The 5th raises the question, whether or not the Common Law principle—that upon a dissolution of a corporation, all its debts and credits are extinguished —applies to the ultimate right of action, given by the charter to the bill-holder against the stockholder ?   For greater convenience, and to avoid repetition, I shall reserve this point until I come to consider the charge of the Court.

[3.] The 7th plea alleges, that the plaintiff was not entitled to his action at the time it was brought, because the bank was not at that time insolvent, but had property and assets which had not

been exhausted.   In our judgment, this plea is too general—it is too vague and uncertain to take issue upon—it should have specified the property.

The 9th, 10th and 11th pleas all relate to the liability · of the stockholders, and may be considered and disposed of together.

[4.]  What stockholders, then, are liable under the charter ?    I answer, briefly, *all* whom the charter makes so, and none others. The 11th section provides, that " the persons and property of the stockholders shall be pledged and held bound in proportion to the amount of shares, and the value thereof, that each individual or company may hold in said bank, for the ultimate redemption of the bills  or notes  issued by said  bank, *in the same manner as in common actions of debt ; and no stockholder shall be relieved from such liability, by sale of his stock*, until he shall have caused to have been given sixty days' notice in some public gazette of this State." *Prince*, 127.   And by the 16th section, it is enacted, that " in case of a failure of said bank,. all the stockholders, who may have sold their stock at any time within six months prior to said failure, shall be liable in  the same  manner, as if they had  not sold their stock."   *Ibid*, 128.

The charter, it will be perceived, does not restrict the liability, as is usually done, to any particular class of stockolders; either those who originally subscribed—those who were stockholders when the bills or notes were issued, or those who were so at the time of the dissolution.   It makes provision, however, for all to escape liability·who have transferred their stock, and given sixty days' notice thereof in some public gazette of this State, *provided* the sale has not taken place within six months prior to the failure of the bank, and  declares most  explicitly, that " no stockholder shall be  relieved from his liability," notwithstanding· any disposition he may have made of his stock, until this is done.

All, then, who  ever were stockholders, are  liable to bill and note-holders, unless they have been discharged in the manner prescribed by the Act.   Such is the plain, express and unmistakable language of  the  Statute ; and so ample was the security which the  Legislature intended to  provide, that even sale and notice is no protection, if  within six months of  the failure.   Each and all are subject to be sued at the instance of any and every bill-holder. There can be but one  satisfaction, of  course, except  for  costs; and the stockholder can·be charged only to the extent of his stock.

Beyond this, he may defend himself; and on payment to this amount, there is an end of further liability.

I shall not be guilty of the folly of darkening the unambiguous terms of the charter, by " words without counsel." The authority of Sir *F. Duarris*, could he be invoked to show, that where restrictive expressions are used in a Statute, all things are intended to be excluded, which are not enumerated, on the familiar principle, that *expressio unius est exclusio alternis ;* or as it is otherwise worded—*expressum facit cessare tacitum*—that the express mention of one thing, implies the exclusion of another. Reference could be made, too, to reported cases, to establish, that where a general Act of Parliament confers immunities, which expressly exempt certain persons from the effect and operation of its provisions, it excludes all exemptions to which the subject might even before, by law, have been entitled, for the reason that the introduction of the exemption is necessarily exclusive of all other independent extrinsic exceptions. 2 *Duar. Stats.* 712, 713. *Rex vs. Cunningham,* 5 *East,* 478. 3 *T. R.* 442. But it is enough for the Court, in this, as in all other cases, to say that "*thus the law is written.*"

As to the question of contribution between the stockholders themselves, we forbear to discuss it. Not being made by the record, it would be premature to do so.

I come now to the errors alleged to have been committed in the charge of the Court; and—

[5.] 1st. It is insisted, that the Court below erred in holding that the notice, given by the defendant, of the transfer of his stock, was sufficient. The objection to it is, that it did not designate the name of the purchaser. Our reply is, that the charter does not impose this obligation on the seller. The stockholder is required merely to give sixty days' notice of the sale in some public gazette of the State ; and this has been done. It is not for this Court *to add to* or *to take from* the words of the Act. The object of the notice was, to put the bill-holder upon inquiry. It is his own fault, if he neglects to do so. We are content to incur the reproach implied in the old saw—that he who sticks to the letter of the Statute, looks only *skin-deep* into its meaning. If the *color* clearly indicates the species to which it belongs, we care not to extend our researches any further. We reiterate our abhorrence of judicial legislation. The first, last and only inquiry of Courts

should be—what saith the law ? and when the response is receiv-
ed, fearlessly to administer it, leaving it to the Legislature to cure
such defects as time may have produced or experience detected.

[6.] 2dly. The Court was asked to charge the Jury, that a sus-
pension of specie payment, and a refusal, by the bank, to pay spe-
cie, generally, when demanded, *was a failure*, in contemplation of
the 16th section of the charter.    The Court refused so to charge,
but on the contrary, instructed the Jury, that a general suspen-
sion and refusal to pay *others* than the plaintiff, was not such a
failure as was contemplated by the Act of incorporation, but that
in order to avail himself of the benefit of its provisions, the plain-
tiff must prove a demand on his own account, and refusal to pay.

It seems to be conceded by counsel, that there was error in re-
fusing to give the charge as asked, as well as in the instructions
which were given.    At any rate, it was in direct conflict with the
judgment of this Court, in *Lumpkin et al. vs. Jones*, (1 *Kelly*, 27,)
as to what constitutes a bank failure, as well as to the general
tenor of decisions in this country upon this subject.    *State vs.
The New Orleans Gas Light & Banking Company*, 2 *Robinson's
(La.) Rep.* 529.    *Attorney General vs. The Bank of Michigan,
Harrington's Ch. (Mich.) R.* 315.

[7.] 3dly.  Counsel for the defendant below and in error argued,
that upon the dissolution of this corporation, the debts due to and
from it were extinguished ; and that nothing could save this case
from the operation of this Common Law principle, but the legis-
lation which had intervened, appointing a receiver to collect and
pay over the assets ; that, consequently, all proceedings must be
conducted in his name, and that a party, who claims the benefit
of this legislation, must pursue his remedy in accordance with it.
The Court sustained this position, and ruled, that the action could
not be maintained by the present plaintiff, but that under the
Acts of 1842 and 1843, appointing an assignee, suit could be
brought by him only, and by no one else.

In the opinion of this Court, the right of the bill-holder, under
the 11th section of the charter, to hold the person and property of
the stockholder pledged and bound for the ultimate redemption
of the bills and notes of the bank, in proportion to the amount of
his shares and the value thereof—a right which is not *primary*
and *total*, but *secondary* and *proportional*—is one which he may
assert in his own name, before or after the *formal* dissolution of

the corporation—one which is wholly above and beyond the reach of any legislation, and independent and irrespective of it. The power and duty of the receiver, appointed by the Legislature, was to take charge of and collect, as early as practicable, the debts and demands due and owing to the bank, and to pay off and discharge its liabilities. See *Pamphlet Acts*, 1842, *p*. 29, *and* 1843, *ps*. 21, 22. But the recovery, in *this action*, constitutes no part of the assets of the bank, but is a supplemental or superadded security, for the benefit of the bill-holder—one which he is authorized to enforce, in his own name, in an action of debt at law, directly against the stockholder.

By the terms of the original grant or contract with the government, the defendant became liable for every bill or note issued by the bank, in two capacities—one as a member of the corporation —the other as an individual stockholder. He may be made chargeable in both of these ways. When pursued as a corporator, it must be at the instance of the directors, or other legally constituted agents of the corporation, or some satisfactory excuse must be rendered for not doing it. But no such case is made by this record. When this defendant-made himself a stockholder by subscription or purchase, he became ultimately bound to pay the bills and notes of the bank, by an express stipulation, to which he voluntarily assented for his own benefit, and his individual property and credit were thereby pledged to each holder of the bills and notes, to fulfil this stipulation ; and it is upon this undertaking, which no power can impair, that *this proceeding* is instituted. *Penniman vs. Briggs*, 1 *Hopkins' Chan. R.* 300 ; and in error, 8 *Cowen's R.* 387. *Bank of Poughkeepsie vs. Ibbotson*, 24. *Wend. R.* 473. *Castleman vs. Holmes*, 4 *J. J. Marsh. R.* 1. *Drinkwater vs. Portland Marine Railway*, 6 *Shep. R.* 35. *Slee vs. Bloom, original case in Chancery*, 5 *Johns. Ch. R.* 366. *Proceedings on appeal*, 19 *Johns. R.* 456. *In the Court of Errors*, 20 *Johns. R.* 66. *Spear vs. Grant*, 16 *Mass. R.* 9. *Vose vs. Grant*, 15 *Mass. R.* 476.

I would merely add, that this is one of a new and peculiar class of cases, which owe their origin altogether to recent Statutes, imposing a *personal* responsibility upon the members of a private corporation, in case of the neglect of the corporate body to pay the demands which it has incurred. *Ang. & Am. on Corp.* 555. The constitutionality of these Statutes has been settled, that they

are well calculated to protect individuals, who deal with corporations, from danger of loss, will not be questioned.    True, it may be said that these are private transactions, and that it being optional with the people to deal with banks or not—to take their bills or refuse them—the law is not to be *stretched* for their protection.    But every body knows that whatever bank notes may be, by the *Constitution*, they are practically and in fact, in a great measure, not only a *legal tender*, but the only circulation in the country.    The bulk of the community have no discretion to receive or refuse them.    The currency consists mostly of these notes.    Every planter, tradesman and small dealer must take them, or be exposed to the greatest inconvenience.    Trustees of every description—laborers of every class are exposed to risk ; and those, generally, are the greatest sufferers by a bank failure, who are least able to bear the loss.    It is the duty, then, of the Legislature to see to it, that this *paper medium* shall be, if possible, truly and substantially what it purports to be—the representative of gold and silver.    If it is made penal to pass spurious coin, or to use false or deficient weights and measures, it should be considered equally so to inundate the country with irredeemable bank notes.    Sufficient measures have been taken by the government to prevent this, by compelling the *issuers* to become security in person and property for their payment.    This is a most commendable policy ; and it is not for us to hinder and thwart its salutary operation.

Knowing that this decision would involve principles of the first interest and importance, both to the parties and the public, it is a great relief to feel an unwavering confidence in the correctness of our conclusions ; for there is no more unpleasant exercise of our duty, than to be *forced* to *decide* where we entertain doubts.

[8.] The Statute of Limitations was pleaded to the action, and is insisted on in the brief of the counsel for the defendant.    Upon a careful examination of the record, however, we do not see that it is legitimately presented for our determination.    I will only repeat now, therefore, what fell from the Court in *delivering* its opinion, namely : that it appears to have been long since settled in the English Courts, that the limitation of six years did not extend to the case of an action of debt, founded upon a statutory liability—the Statute being considered in the nature of a specialty. *Com. Dig. tit. Temps. G.* 15.    *Jones vs. Pope*, 1 *Sand. R.* 37.

*Hodsdon vs. Harridge,* 2 *Sand. R.* 61, 65.    *Talony vs. Jackson,*
*Cro. Cas. Rep.* 513.    And that in the case of *Bullard vs. Bell,* (1
*Mason's Rep.* 243,) before the Circuit Court of the United States,
in 1817, Judge *Story* reviewed all the authorities upon this sub-
ject,,and decided that the Statute of Limitations did not extend to
an action of debt against the stockholders of a corporation, found-
ed on a statutory liability.

The judgment of the Court below, for the errors specified,
must be reversed, and the cause remanded for further proceed-
ings.