### 72729. GAMBLE v. THE LOVETT SCHOOL.
(350 SE2d 311)

BEASLEY, Judge.

In 1984 Gamble sued Lovett for breach of contract, alleging that he had been employed by Lovett as a teacher from 1959 to 1981 and that during that time he had obtained tenure, which status was granted to those who worked at least three years from September 1966. Tenure was asserted to be "security in employment" which meant that a person with tenure rights would not be terminated in case of staff reduction before another employee with less service and that with tenure one could not be terminated without cause and without the approval of the school's Board of Trustees. Gamble, from the school years 1966 to 1972, signed yearly contracts which provided the right to tenure. He became tenured with the end of the 1968-69 school year and the execution of his 1969-70 employment contract. Despite performing all aspects of his employment contracts, Gamble's employment was not renewed for the 1981-82 school year. He claimed this breached his vested right to employment since there were teachers his junior who were retained, he was not terminated for cause, and the Board of Trustees neither considered his renewal nor offered him a hearing. Gamble alleged the breach occurred in 1981 and sought recovery of nominal damages and lost wages.

Lovett's answer denied the material allegations of the complaint and posited several defenses, the primary one being that the action was barred by OCGA § 9-3-24, the six-year statute of limitations for simple written contracts.

After discovery, the trial court granted Lovett's motion for summary judgment, its motion predicated on the statute of limitations.

In February 1970 the Board of Trustees approved the "Regulations Governing the Function and Operation of the Lovett School," which contained a provision regarding teacher tenure: "After three years of successful service in the school, teachers are on 'tenure' status which assures continued employment except under the following conditions: in the event of the necessity for reduction in numbers

among the teaching staff, teachers will be retained on the basis of seniority; discontinuation of employment for mental or physical disability to perform duties prescribed; for offenses of criminality or moral turpitude and for persistent violation of the Lovett code of professional ethics. If it is apparent that consideration should be given to discontinuation of services of a teacher on tenure, the Headmaster will report the complete facts to the Board of Trustees with recommendations (a copy of which will be given to the teacher) with final action contingent upon decision of the trustees, subject to a hearing at the discretion of the Board of Trustees."

During the period of 1966 through 1972, the teachers' employment contracts with Gamble contained the language: "Implicit in this contractual agreement is the responsibility of the school to observe professional regard for teacher tenure, sick leave, work hours, and duties which are usual and customary in the teaching function."

In 1972 Lovett acquired a new headmaster who was opposed to tenure. The staff was notified that tenure was eliminated and teachers' handbooks afterwards contained the disclaimer: "Since there is no tenure law governing continued employment at Lovett . . ." Gamble's employment contract for 1972-73 and succeeding years read: "Implicit in this contractual agreement is the responsibility of the School to observe professional regard for sick leave, work hours, and duties which are usual and customary in the teaching function." Any reference to tenure was therefore omitted.

Gamble contends that he had a vested right to tenure as of 1970 and that when the school terminated or failed to renew his contract in 1981 it breached his vested contractual right. Lovett contends that Gamble had no vested right to tenure but that if he did, the breach occurred in 1972, not later than the execution of the 1972-73 employment contract, and that the six-year statute of limitations had consequently run prior to 1984 when suit was filed.

First of all, there were no requirements for tenure and no identification of what it entailed prior to the school regulations of February 1970, even if we assume the employment contracts referenced that document. That would mean that Gamble did not serve three years after the creation of tenure so as to acquire rights thereunder. For in 1972 tenure was no longer included in the contracts and was officially abolished.

However, even if we assume the 1970 regulations were a statement of past policy which was included in the contracts beginning in 1966 as Gamble alleges, he still is barred by the statute of limitations. Using his own terminology that tenure provided "security in employment," that feature was eliminated in 1972. At that point he lost his "security in employment," and it is then that a breach of contract, if any, transpired.

In contract actions the time of the breach controls, not the time the actual damages result or are ascertained. *R. L. Sanders &c. Co. v. Miller*, 153 Ga. App. 225, 226 (1) (264 SE2d 731) (1980). As held in *Mobley v. Murray County*, 178 Ga. 388 (1) (173 SE 680) (1934) "the true test to determine when the cause of action accrued is 'to ascertain the time when the plaintiff could first have maintained his action to a successful result.' " Actual damage is not essential, but the right of action has its inception upon the breach of duty. Here, while plaintiff's employment was not terminated in 1972 and there was no actual monetary loss, from that time hence Lovett no longer "observed professional regard for teacher tenure" and at that point his "security in employment" ceased.

It is pointed out that Lovett grandfathered other privileges such as scholarships for children of teachers. However, the clear showing here is that there was an elimination of tenure and no policy either express or implied that would indicate any intent to carry tenure forward. Instead, Gamble himself admits he understood in 1972 that tenure was no longer a part of the faculty's benefits.

We find no merit in Gamble's argument that a different rule applies to executory contracts. The series of annual contracts here did not constitute executory contracts as to the anticipatory breach of which plaintiff could either bring the action then or wait until failure of performance. Compare *Piedmont Life Ins. Co. v. Bell*, 103 Ga. App. 225, 233 (3) (119 SE2d 63) (1961). Here, although the monetary damage was yet to come, the contract was breached when the security was lost, more than six years before the action was brought. See *Leathers v. Timex Corp.*, 174 Ga. App. 430, 432 (330 SE2d 102) (1985).

*Judgment affirmed. Deen, P. J., and Benham, J., concur.*

DECIDED OCTOBER 30, 1986.

*Jonathan A. Zimring*, for appellant.
*Michael R. Smith, William A. Clineburg, Jr.*, for appellee.