A08A1958, A08A1959. TEACHERS RETIREMENT SYSTEM OF GEORGIA et al. v. PLYMEL et al.; and vice versa.
(676 SE2d 234)

BARNES, Judge.

This class action was brought by retirees who contended that the Teachers Retirement System ("TRS") incorrectly calculated their monthly retirement pay. The Supreme Court previously reversed the trial court's grant of summary judgment to TRS, analyzing the applicable statute and directing the trial court to determine whether the class members should have received a higher monthly benefit and which statute of limitation applied. *Plymel v. Teachers Retirement System*, 281 Ga. 409 (637 SE2d 379) (2006). After remand, TRS did not dispute that the members received lower monthly payments than they should have, and did not contest any claims resulting from the retirement of members beginning six years before this complaint was filed. The trial court granted summary judgment to the class, holding that the applicable statute of limitation was 20 years, and that the claims accrued payment by payment instead of only once when the class member retired. The court ordered TRS to pay into a common fund the difference between what it paid and what it should have paid, plus 4.5 percent pre- and post-judgment interest. The court also granted class counsel's fee application and set aside 30 percent of the common fund for fees, costs, and expenses.

In Case No. A08A1958, TRS contends the trial court erred by applying the twenty-year statute of limitation for enforcement of rights under a statute (OCGA § 9-3-22) instead of the six-year statute of limitation for breach of contract (OCGA § 9-3-24). TRS also asserts the trial court erred in finding that a new statute of limitation begins to run upon each successive benefits payment, and erred in awarding class counsel such a large fee. In Case No. A08A1959, the class members argue the trial court erred in awarding interest at only 4.5 percent instead of 7 percent pre-judgment (OCGA §§ 7-4-15; 7-4-2), and prime plus 3 percent post-judgment (OCGA § 7-4-12). For the reasons that follow, we reverse the trial court's finding that the applicable statute of limitation is twenty years instead of six and its application of 4.5 percent pre- and post-judgment interest, and remand for further proceedings consistent with this opinion. We affirm the finding that the statute of limitation begins to run on each successive breach and the attorney fee award.

The class members are retired educators who are members of TRS. At retirement, each class member elected to participate in an optional retirement plan, which paid a reduced monthly retirement benefit for the retired teacher with a remaining benefit paid to a named beneficiary upon the teacher's death, as provided in OCGA § 47-3-121.[1] The optional plan benefits were calculated using "option factors" based upon mortality tables adopted by TRS in 1983. In 2003 TRS adopted new option factors based on new mortality tables, which reflected a longer life expectancy. The longer the member has to fund the beneficiary's remainder benefit, the cheaper the monthly payments are to buy that benefit. Thus, as life expectancy increased with the new mortality tables, the member had a longer time to buy the benefit, which resulted in smaller deductions from the member's monthly benefit amount. The application of the new option factor resulted in increased benefits payable under the option plan for retirees who retired after February 2003, but TRS did not increase the monthly benefits for members who retired before then. See *Plymel v. TRS*, supra, 281 Ga. at 410-411 (2).

TRS is governed by a complex statutory scheme provided in OCGA § 47-3-1 et seq., which requires that the optional plan allowance be "actuarially equivalent" to the maximum plan allowance. The members filed this action in April 2004 alleging that TRS unlawfully used an outdated mortality table to calculate the optional plan participants' monthly benefits. The trial court initially granted summary judgment to TRS, and the members appealed to the Supreme Court of Georgia, contending that TRS breached their employment contracts and raising constitutional claims.

The Supreme Court of Georgia held that the trial court erred in granting summary judgment to TRS on the members' breach of contract claim. *Plymel v. TRS*, supra, 281 Ga. at 412 (4). It concluded that TRS was obligated to use the updated mortality tables it had adopted for other uses to calculate the deductions for the optional plan participants, and further held that it need not address the members' constitutional claims, which were premised on its agreeing with TRS on the contract claims. Id. at 415, n. 13. The court remanded the case to the trial court to determine whether the optional plan and maximum plan benefits were actuarially equivalent, and to address any other claims, including whether any of the members' claims were "barred by the applicable statute of limitations." Id. at 415.

---

[1] The other plan available to retirees provided benefits only to the class members and paid the maximum monthly amount.

On remand from the Supreme Court, TRS did not dispute that it used the wrong mortality tables in calculating the optional plan benefits, and that it owed additional funds to some class members, but disputed the amounts due. The trial court granted summary judgment to the class members and attorney fees to class counsel, and this appeal followed.

## Case No. A08A1958

1. TRS first argues that the applicable statute of limitation is six years for breach of contract rather than twenty years for enforcement of a statutory right. The trial court disagreed. It held that, according to the Supreme Court opinion, the class members' statutory claims form the basis of their recovery, not their individual contracts, none of which had been introduced into evidence during this litigation. Accordingly, the trial court concluded that the applicable statute of limitation was 20 years under OCGA § 9-3-22, which provides, "All actions for the enforcement of rights accruing to individuals under statutes or acts of incorporation or by operation of law shall be brought within 20 years after the right of action has accrued."

TRS argues that statutes establishing government employee retirement plans become part of the employees' employment contract, which is then interpreted under contract law. The statute of limitation for breach of contract is six years. OCGA § 9-3-24. Further, class members framed their argument in breach of contract terms, and the Supreme Court of Georgia agreed with the plaintiffs that the trial court "erred by granting summary judgment to TRS on [the members'] breach of contract claim." *Plymel v. TRS*, supra, 281 Ga. at 412 (4).

We agree. Georgia's appellate courts have held that a "statute or ordinance establishing a retirement plan for government employees becomes a part of an employee's contract of employment if the employee contributes at any time any amount toward the benefits he is to receive." *Parrish v. Employees' Retirement System of Ga.*, 260 Ga. 613 (1) (398 SE2d 353) (1990) (irrevocable statutory tax exemption unconstitutional, and therefore new legislation subjecting retirement benefits to state taxation was not unconstitutional impairment of contractual obligation); *Alverson v. Employees' Retirement System of Ga.*, 272 Ga. App. 389, 391 (1) (b) (613 SE2d 119) (2005).

Further, reviewing the history of the 20-year statute of limitation reveals that it does not apply in this situation. The General Assembly enacted the predecessor to OCGA § 9-3-22 in 1856. *Harris v. Smith*, 68 Ga. 461, 462 (1882). In the early stages of codifying the law, if no statute prescribed a limitation for a cause of action, then

the suit was "not barred by mere lapse of time." *Nixon v. Nixon*, 196 Ga. 148, 153 (2) (26 SE2d 711) (1943). The 1856 act "sought to provide a limitation of time to apply to every suit at law in this State." Id.

> The evident purpose of [the 20-year statute] is to fix a period of limitation for special cases not provided for by the general statute of limitations, or otherwise, where rights accruing to "individuals" are sought to be enforced. A statutory liability is one that depends for its existence upon the enactment of a statute, and not upon the contract of the parties.

*Bigby v. Douglas*, 123 Ga. 635, 637-638 (51 SE 606) (1905) ("right of one surety to compel contribution from a cosurety, recognized and declared in the Civil Code, § 2992, is not of statutory origin," but mere codification of common law).

In concluding that the 20-year statute of limitation did not apply to a suit against a county sheriff seeking repayment of money left over after the sheriff levied on a writ of fieri facias, the Supreme Court considered the legislature's intentions.

> In looking at the act itself, we find that the legislature was dealing with rights accruing to individuals under statutes, and acts of incorporation, the latter of which, especially about the date of the passage of the act, had given rise to great litigation in the state. In some of the cases growing out of both statutory and charter liabilities of parties, it was held that obligations arose which were quasi ex contractu, and imposed by operation of mere law. Looking at the act and the judicial decisions of the times, it would seem that these words were intended to apply to such rights as arise in connection with, though not strictly under, the very words of the statutes or acts of incorporation.

(Citation and punctuation omitted.) *Harris v. Smith*, supra, 68 Ga. at 462-463.

In other words, the legislature was spurred to enact the 20-year statute of limitation because corporations were being created by charter in courts of law and the bench and bar were confused about the rules applicable to lawsuits involving these corporations. This point is illustrated by an earlier case, *Ga. Masonic Ins. Co. v. Davis*, 63 Ga. 471, 472 (1879). The charter of the defendant Georgia Masonic Mutual Life Insurance Company "was an act of the general assembly," which created a corporation for the purpose of insuring

the lives of each member. Id. Seven years after the company failed to pay benefits to the executors of a deceased member, the executors sued the company, which subsequently appealed a verdict against it, arguing that the applicable statute of limitation was six years for a simple contract, not twenty years under the statute. Id. at 473. The court disagreed and explained that, while there *was* a contract between the deceased member and the company, it only addressed the terms of the decedent's membership, which was not the issue at hand. "What the corporation has failed in is in not complying with its charter and by-laws since his death," the court held, and "[t]he non-performance of this duty is the default for which the present action was brought" and to which the twenty-year statute applied. Id. at 474. See also *Pierce v. Rhodes*, 208 Ga. 554, 556 (2) (67 SE2d 771) (1951) (20-year statute applied to retired fireman's suit over pension payments pursuant to statute); *Lane v. Morris*, 8 Ga. 468, 478-479 (1850) (20-year statute applied to stockholder's claim founded on statutory liability against bank for debt).

The trial court and appellees in this case cite *Georgia Masonic* for the proposition that the 20-year statute should apply, but considering the statutory history and entire opinion, the case does not support this conclusion. The court in that case said:

> The deceased, in his life-time, planted a contract, and from that root sprang up a statutory right, the measure of which is found in the charter and by-laws, and to gather in the fruits of that right the action is prosecuted. The purpose of the suit is not to burrow after the contract, but to shake the tree which express enactment of the law has made to grow out of it.

Id. at 474. In other words, the corporate charter, or statute, contained all the terms of the insurance payments. Accordingly, the twenty-year statute applied to a claim for payment arising under the charter.

The reverse was true in *Savannah & Ogeechee Canal Co. v. Shuman*, 98 Ga. 171 (25 SE 415) (1896). There, the plaintiff sued the canal company, alleging he was unable to transport his lumber by boat because the company failed to maintain the canal. The Court held that the trial court erred in applying the twenty-year statute of limitation, because the canal company's charter (statute) only required the company to keep the canal in good repair and open to navigation, and expressly created no liability in favor of any individual. The duty was imposed for the benefit of the public; anyone injured by breaching the duty had a right of action against the

company; and thus the company's liability did not arise from the charter.

> If the charter had declared that in case the company should fail to keep its canal in good condition and repair, and any person should be injured thereby, the company should be liable to such person for the injury, this would have created such a statutory right in favor of a person thus injured as would render [the 20-year statute of limitation] applicable.

Id. at 173. Consequently,

> the twenty-year limitation prescribed in that statute has reference only to rights which arise under legislative enactment, and which would not exist except for some act of the legislature. . . . [It] applies to cases in which there is a special liability created by a special charter or statute, as instanced in numerous cases in the early Georgia reports.

*Williams v. Clemons*, 178 Ga. 619, 621 (173 SE 718) (1934).

Thus, the 20-year statute of limitation does not apply to all cases in which a statutory duty is violated. "[I]f, indeed, it were made so to apply, we are at a loss to see where it would stop; for every right to recover arises in some way by operation of law, and if we stick to the letter of this act there would be but few cases barred by [a shorter] statute." *Harris v. Smith*, supra, 68 Ga. at 463. "Where all persons injured by a breach of duty are given a right of action, and not particular individuals, the fact that a right of action is founded upon a statute does not introduce the twenty-year limitation." *Anderson v. Anderson*, 23 F2d 331, 332 (N.D. Ga. 1927) (suit by receivers against directors of failed banking association subject to Georgia's four-year statute of limitation for negligence, not twenty-year statute).

In this case, the members' rights to their retirement pay do not arise from the statute; they arise from their contract of employment. The statute simply provides the mechanism by which that payment is calculated. Therefore, the six-year period of limitation applies in this case.

2. The trial court also held that the statute of limitation accrued each month the retirees were underpaid, rather than once when they retired. OCGA § 9-3-24 requires that an action upon a written contract be brought within six years after the contract becomes due and payable, and when that six-year period begins running on a breach of contract claim depends on whether the agreement is entire or divisible. *Douglas & Lomason Co. v. Hall*, 212 Ga. App. 475, 477 (1) (441 SE2d 870) (1994).

If the contract is divisible, the statute runs separately as to each payment when it becomes due, and the failure of one part does not void the remainder. *Piedmont Life Ins. Co. v. Bell*, 103 Ga. App. 225, 235 (3) (119 SE2d 63) (1961). If "the contract was to take the whole or none, then the contract would be entire, but, on the other hand, if the quantity, service, or thing is to be accepted by successive performances, then the contract may properly be held to be severable." Id. "The character of the contract in such case is determined by the intention of the parties." OCGA § 13-1-8 (b).

The trial court here determined that this was an entire contract, but that the breaches occurred at successive periods, thus allowing an action for each breach under OCGA § 13-6-14. While we agree with the trial court's conclusion that the statute of limitation accrued on a payment-by-payment basis, we do so for a different reason. In this case, "the agreement is not entire, because the contractual consideration at issue is not a single sum certain which remained unpaid after a definite due date," but instead "was for an indefinite total amount which was payable in installments over the uncertain period" of the member's life. *Baker v. Brannen/Goddard Co.*, 274 Ga. 745, 748-749 (2) (559 SE2d 450) (2002). "Unlike a payee who accelerates the remaining indebtedness evidenced by an overdue promissory note, [the members] did not have an immediate claim for the entirety of all future unearned monthly [retirement benefits] payable under the contract." Id. at 749. The members' retirement benefits were to be paid in "successive performances," as determined by their continued life. Accordingly, while claims for higher monthly payments due more than six years before the suit was filed are barred, "all the breaches occurring up to the commencement of the action must be included therein." OCGA § 13-6-14.

TRS argues that the contract is entire, and that the exception in OCGA § 13-6-14 — providing that if breaches in an entire contract occur in successive periods, an action lies for each breach — does not apply here because TRS only breached the contract once, citing *City of East Point v. Seagraves*, 240 Ga. App. 852, 853 (1) (524 SE2d 755) (1999). That case, however, is physical precedent only, and thus is not binding precedent.[2] Further, in *City of Lafayette v. Bates*, 234 Ga. App. 662, 663 (507 SE2d 252) (1998), we determined that the statute of limitation for an action seeking payment of unused sick leave began running when the City changed its employees' sick leave

---

[2] "[A]n opinion is physical precedent only with respect to any Division of the opinion for which there is a concurrence in the judgment only or a special concurrence without a statement of agreement with all that is said." Court of Appeals Rule 33 (a).

policy, not when the payments came due. In *Gamble v. The Lovett School*, 180 Ga. App. 708 (350 SE2d 311) (1986), a teacher lost his "security in employment" when the school changed its tenure policy, which is when the statute of limitation began running.

Similar reasoning cannot be applied to this case. TRS had a duty to pay benefits in successive installments over the uncertain period of the members' lives. Accordingly, the trial court did not err in holding that the statute of limitation accrued on a payment-by-payment basis.

3. The trial court granted class counsel's application for 30 percent of the Common Fund for attorney fees and expenses after considering in detail the 12 *"Johnson"* factors this court approved in *Friedrich v. Fidelity Nat. Bank*, 247 Ga. App. 704, 707 (545 SE2d 107) (2001). These factors include the time and labor required, the difficulty of the question, the attorneys' skill, and the results obtained.

TRS asserts on appeal that this award is excessive. The uncontested claims falling within the six-year statute of limitation total over $93 million, 30 percent of which is almost $28 million. These funds would otherwise go to the retirees and come, not from a for-profit corporation, but from a public retirement system, it argues. Class counsel responds that their payment comes from the common fund that TRS had to pay regardless and that TRS has no standing to complain about a fee issue between class members and class counsel, who have fought this complex case since 2004.

Pretermitting whether TRS has standing to complain about the fee awarded to class counsel from the common fund, we conclude that the trial court did not err in its award. As the trial court noted, under Georgia law, if a common fund is generated in a class action for the benefit of the class, a percentage of the fund goes to pay for reasonable attorney fees. *State of Ga. v. Private Truck Council of America*, 258 Ga. 531, 534-535 (5) (371 SE2d 378) (1988). The trial court held that the benchmark for an attorney fee award was between 20 and 30 percent, started with an award of 25 percent in this case, then adjusted it upward to 30 percent. In determining the fee amount, the trial court identified all the factors on which it relied and explained in detail how each factor affected the selection of the percentage awarded as fees, as required by *Friedrich v. Fidelity Nat. Bank*, supra, 247 Ga. App. at 707. The trial court considered, among other things, the four years of novel litigation to that point, in February 2008, the difficulty and importance of the case, to which class counsel devoted substantial amounts of its practice with "the risk of zero recoupment," the agency's vigorous defense, the fact that time was running out for the elderly retirement beneficiaries, and the extraordinary result and reward to the class. The trial court

reviewed the attorney fees granted in five other class actions, which ranged from 25 to 33 percent and noted that the class members probably would not have obtained relief any other way, because "TRS refused requests from retired teachers to voluntarily recalculate the option benefits."

The trial court exhaustively considered all 12 *"Johnson"* factors, and thoroughly explained the reasoning behind the award. We find no error.

## *Case No. A08A1959*

4. The class members argue that the trial court applied the wrong interest rates to the judgment. TRS does not dispute that it owes back benefits, and has already paid into the common fund about $93 million, which represents amounts due applying the six-year statute of limitation. The court held that the applicable pre- and post-judgment interest rate was 4.5 percent, based on an administrative rule. Class members argue in their cross-appeal that this interest rate applies to retirement system operations, not to judgments, and that the trial court should have awarded seven percent pre-judgment interest and prime plus three percent post-judgment interest.

OCGA § 7-4-2 (a) (1) (A) provides that the legal rate of interest is seven percent unless the rate is otherwise established by written contract. OCGA § 7-4-12 (a) provides that post-judgment interest is prime plus three percent, again unless the rate is otherwise established by written contract. The Code further defines "interest" as "a charge for the use of money computed over the term of the contract at the rate stated in the contract or precomputed at a stated rate on the scheduled principal balance or computed in any other way or any other form." OCGA § 7-4-2 (a) (3). TRS argues its Board of Trustees established the interest rate at 4.5 percent under a statute directing the Board to determine the rate of "regular interest" to use "in all calculations required in connection with the retirement system." OCGA § 47-3-23 (b). In 1975 the Board adopted Administrative Rule 513-5-1-.50, which provides in its entirety, "Member accounts will be credited with 4-1/2% interest rather than 3-1/2% effective June 30, 1975."

While employed, teachers contribute a percentage of their income to fund part of their retirement, and TRS holds that money in its annuity savings fund. "Member accounts" are the employees' individual accounts which contain their contributions. See OCGA §§ 47-3-1 (1); 47-3-41 (a). Member accounts must be credited with interest once a year (OCGA § 47-3-44), and the 4.5 percent set in the administrative rule applies to this interest paid from one fund to the other. That interest is paid out of the "pension accumulation

fund," from which the pensions are paid once the employee retires or dies. When either event occurs, the former employee is no longer a "member" of the system and that person's individual member account is paid into the pension accumulation fund. OCGA §§ 47-3-60 (e) (1), (2); 47-3-41 (d). The retiree or his beneficiary is entitled to an annuity based on amounts formerly held in the annuity savings fund, plus a pension that raises the annuity payment to a sum calculated on income and years of service. OCGA § 47-3-120 (a).

Two years after adopting this rule paying 4.5 percent annually to the member accounts, the Board of Trustees asked the Attorney General for an opinion as to "whether the term 'regular interest' as it is used throughout the TRS Act requires that only one rate of regular interest be used in all calculations made in connection with the operation of TRS." (Emphasis omitted.) Op. Atty. Gen. 77-74. In his answer, the Attorney General noted that "the use of differing interest rates for different calculations is the standard practice among governmental and private retirement systems," and that it was "abundantly clear that many different rates of interest have been used by the board of trustees in connection with different calculations made by TRS for various purposes." Id. For example, the actuarially assumed interest rate was five percent, but the actual rate paid on member contributions was 4.5 percent. The opinion concluded that TRS had the statutory authority to "establish different rates of regular interest for use in connection with different mathematical calculations made by the Retirement System." Id.

A contract that specifies an interest rate for one purpose does not automatically set the rate for other purposes. For example, in a contract that specified only the interest rate on overdue loan installments, the statutory rate applied to pre-judgment interest. *Hopkins v. West Publishing Co.*, 106 Ga. App. 596, 601 (3) (127 SE2d 849) (1962). In a contract that set a ten percent interest rate on unpaid earnest money, the statutory rate applied to an award for unpaid rent. *Ware v. Renfroe*, 231 Ga. App. 529, 533-534 (3), (4) (499 SE2d 907) (1998). The award of interest on an accelerated loan balance was limited to seven percent rather than the nine percent sought, as nothing in the note authorized the collection of a higher rate upon default. *Atlantic Bank &c. Co. v. Fox*, 157 Ga. App. 673, 674 (278 SE2d 474) (1981).

As the Attorney General opinion makes clear, TRS already uses different interest rates in different calculations. Its administrative rule only establishes the rate that applies to member accounts, does not by its terms apply to pre- or post-judgment interest, and cannot be construed to apply to any other calculation TRS makes. There being no pre- or post-judgment interest rate established by written

contract, the trial court erred in applying the rate of 4.5 percent in both cases instead of the statutory rates of 7 percent and prime plus 3 percent.

*Chilivis v. Rogers Oil Co.*, 135 Ga. App. 176 (217 SE2d 179) (1975), which TRS cites for the proposition that the applicable interest rate is 4.5 percent, involves the application of the statutory 6 percent rate to tax refunds. This court held that the rate set in the statute applies to pre- and post-judgment interest on tax refunds awarded in a lawsuit. While statutory interest rates on amounts due can apply to interest on a judgment, in this case no statute sets such a rate. Accordingly, the trial court erred in fixing the interest rate on the judgment at 4.5 percent.

Therefore, this case is remanded to the trial court with direction to determine the correct amount of damages owed and include interest at the appropriate rate.

*Judgment affirmed in part and reversed in part, and case remanded with direction. Johnson, P. J., and Phipps, J., concur.*

DECIDED FEBRUARY 19, 2009 —
RECONSIDERATIONS DENIED MARCH 23, 2009 —

*Thurbert E. Baker, Attorney General, Annette M. Cowart, Senior Assistant Attorney General, Bryan K. Webb, Christopher A. McGraw, Assistant Attorneys General*, for appellants.

*Gregory & Forehand, Hardy Gregory, Jr., David A. Forehand, Jr., Cook & Connelly, Bobby Lee Cook, Rogers & Hardin, Richard H. Sinkfield*, for appellees.