[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-11707
_____

D.C. Docket No. 3:14-cv-00043-CDL

DAVID A. WOOD,
NANCY COCHRAN,
BOBBY SNIPES,
WENDELL FAULKNER,
on behalf of themselves and all
persons similarly situated,

Plaintiffs – Appellants,

versus

UNIFIED GOVERNMENT OF ATHENS-CLARKE COUNTY, GEORGIA,

Defendant – Appellee.
_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(April 7, 2016)

Before TJOFLAT and ROSENBAUM, Circuit Judges, and GOLDBERG,* Judge.

_____

* The Honorable Richard W. Goldberg, of the United States Court of International Trade, sitting
by designation.

GOLDBERG, Judge:

In this putative class action, David A. Wood, Nancy Cochran, Bobby Snipes, and Wendell Faulkner ("the Appellants") allege that the Unified Government of Athens-Clarke County, Georgia ("the ACC") breached contractual obligations to provide health benefits to eligible retirees.[1]  Shortly after this suit began, the ACC moved for partial judgment on the pleadings, arguing that the statute of limitations bars the Appellants' claims.  The district court granted the ACC's motion.  After a careful review of the record and the district court's decision, and with the assistance of oral argument, we reverse.

## **BACKGROUND**[2]

The Appellants are retirees of the ACC.  David A. Wood served as an electrician from 1976 until he retired in 2011.  Nancy Cochran started as a magistrate court clerk in 1982 and later served as an administrative assistant in the fire department before retiring in 2009.  Bobby Snipes first worked as a traffic

---

[1] The Appellants included a claim for impairment of contract under the United States Constitution.  U.S. Const. art. I, § 10, cl. 1.  On that basis, the district court exercised subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (2012).  The Appellants also included state-law claims for breach of contract and contract impairment under the Georgia Constitution.  The district court had supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367.  This court has jurisdiction over the interlocutory appeal under 28 U.S.C. § 1292(b).

[2] When considering a motion for judgment on the pleadings, the court "must accept all facts in the complaint as true and 'view them in the light most favorable to the nonmoving party.'"  *Moore v. Liberty Nat'l Life Ins. Co.*, 267 F.3d 1209, 1213 (11th Cir. 2001) (citation omitted).

engineer when hired in 1973, but he was the deputy manager when he retired in 2012. Wendell Faulkner was a firefighter from 1977 until 2004, when he retired as the fire chief of the ACC. All are aged 65 or older.

The ACC "promised each employee it hired before July 1, 2002, that in return for a certain minimum number of years of employee services (usually 10 years)," the ACC "would provide cost-free health coverage for life at the same level that the employee received on her last day of employment." In other words, the ACC promised to indemnify retirees for healthcare costs at the same level that it indemnified them for healthcare costs on their last day of employment. Each Appellant worked the requisite number of years and is eligible for indemnification. Thus, the Appellants upheld their end of the deal.

But the Appellants allege that when the time came for the ACC to honor its end, the ACC refused. Each Appellant insists that, on the day of his or her retirement, the ACC covered all health insurance premiums. Yet ordinances adopted in 2002 and 2013 now require the Appellants to elect Medicare at the age of 65 and pay their own Medicare premiums. Through these ordinances, the ACC also provides monthly contributions to the Appellants to purchase supplemental insurance as an add-on to Medicare. That said, the supplement insurance contribution is not enough for the Appellants to purchase supplemental insurance that, when combined with their Medicare, provides a level of health-cost

3

indemnification equal to the level provided on each Appellant's last day of employment. Consequently, the Appellants maintain that the ACC breached, and continues to breach, its promise to provide the Appellants with healthcare benefits for life at the same level that each Appellant received on his or her last day of employment. As a result of these breaches, the Appellants allegedly suffer damage in two ways: First, they must pay out-of-pocket for their Medicare premiums and, second, they must incur additional healthcare costs "resulting from [the ACC's] refusal to have supplemental coverage providing the same level of indemnification [the Appellants] received on the last day of their employment."

We do not address the merits of the Appellants' claims on appeal. Instead, we review *de novo* the decision of the district court to grant partial judgment on the pleadings. *Mergens v. Dreyfoos*, 166 F.3d 1114, 1116 (11th Cir. 1999). The court concluded that (1) the Appellants' contract claims accrued in 2002 with the enactment of the ordinance, (2) the contract is entire and, therefore, (3) the applicable statute of limitations bars the Appellants' contract claims.[3] On appeal, the Appellants argue that the contract is divisible, rendering actionable any breaches occurring within the statute of limitations. We agree.

---

[3] According to the parties, the statute of limitations is six years on claims for breach of contract and contract impairment under the Georgia Constitution. The limitations period is two years on claims for contract impairment under the United States Constitution.

4

## DISCUSSION

The question on appeal is simple—is the contract between the ACC and the Appellants entire or divisible?  If the contract is entire, "only one action may be maintained for a breach," and the statute of limitations runs from the breach.  Ga. Code Ann. § 13-6-14 (2015).  To illustrate, if the ACC breached the contract in 2002 as the district court held, the statute of limitations began running in 2002.  Because the Appellants initiated this action in 2014, well beyond the limitations period, the statute of limitations would bar their claims for the 2002 breach.  On the other hand, if the contract is divisible, the statute of limitations "runs separately as to each" breach, allowing the Appellants to proceed with any breaches occurring within the limitations period.  *Teachers Ret. Sys. of Ga. v. Plymel*, 676 S.E.2d 234, 240 (Ga. Ct. App. 2009); *see* Ga. Code Ann. § 13-6-14 ("[I]f it is severable or if the breaches occur at successive periods . . . an action will lie for each breach.").  Accordingly, if the contract is divisible, it is irrelevant when the ACC first breached the contract.  It matters only that the successive breaches forming the basis of the claims happened within the limitations period.

In Georgia, a contract is entire if "the whole quantity, service, or thing, all as a whole, is of the essence of the contract, and if it appear[s] that the contract was to take the whole or none."  *Piedmont Life Ins. Co. v. Bell*, 119 S.E.2d 63, 72 (Ga. Ct. App. 1961).  Put differently, an entire contract involves "a single sum certain."

5

*Baker v. Brannen/Goddard Co.*, 559 S.E.2d 450, 453 (Ga. 2002). In contrast, a contract is divisible "if the quantity, service, or thing is to be accepted by successive performances." *Piedmont*, 119 S.E.2d at 72. In *Baker*, the Georgia Supreme Court held that a contract is divisible when it is "for an indefinite total amount which [is] payable in installments over [an] uncertain period." 559 S.E.2d at 454. The court also reasoned that a contract is divisible when the plaintiff does "not have an immediate claim for the entirety of all future unearned monthly installments payable under the contract" as would, for example, a party to an entire contract who may accelerate the remainder of the obligation. *Id.*

Based on the above criteria alone, the contract between the ACC and the Appellants is divisible. Although the ACC made a single promise to provide retirement healthcare benefits, the ACC can perform this promise only by successive performances in the form of premium payments or other cost indemnification or both. And the obligation to provide healthcare benefits continues throughout the uncertain span of each retiree's life. Further, the unpredictable fluctuations in each retiree's healthcare costs make even more uncertain the ultimate amount that the ACC will owe each month. Thus, as with divisible contracts, the contract here requires "successive" payments of healthcare premiums and indemnification, *Piedmont*, 119 S.E.2d at 72, "for an indefinite total

amount" over the "uncertain period" of each Appellant's life, *Baker*, 559 S.E.2d at 454.

Moreover, the Appellants have no "immediate claim for the entirety" of the contract, as they would if the contract were entire. The contract lasts for the life of each Appellant and includes inherently unpredictable costs. Therefore, it is impossible to know now the aggregated amount of a lifetime of health-cost indemnification and healthcare premiums. For that reason, the Appellants can pursue neither a "single sum certain" nor the "whole quantity, service, or thing," as could a party to an entire contract.

Even if these broad criteria alone provide an insufficient basis for resolving this case, the Georgia Court of Appeals has addressed the divisibility of retirement-benefits contracts. In *City of Lafayette v. Bates*, 507 S.E.2d 252 (Ga. Ct. App. 1998), the court viewed a benefits contract as entire. By contrast, in *Plymel*, 676 S.E.2d 234, the court viewed a different benefits contract as divisible. The contract between the Appellants and the ACC is more like the divisible contract in *Plymel* than the entire contract in *Bates*.

In *Bates*, the city promised to pay retirees "for accumulated unused sick leave (up to 90 days) at their regular rate of pay at [the] time of retirement." 507 S.E.2d at 253. The city eventually abolished this policy. Later, the plaintiff retired and sued to recover the value of the unused sick days that he had accumulated by

7

the time of his retirement.  In sharp contrast to the Appellants here, the retiree in *Bates* sought full performance of the entire contract by payment of a "single sum" of a definite amount covering a definite period.  Unsurprisingly, the court viewed this as an entire contract.  *Id.*

In *Plymel*, a class of retired public employees sued the defendant for providing monthly pension benefits below the contractual level.  676 S.E.2d at 237.  The court noted that, under the contract, the defendant "had a duty to pay benefits in successive installments over the uncertain period of the [class] members' lives."  *Id.* at 241.  The court held that the contract "'is not entire, because the contractual consideration at issue is not a single sum certain which remained unpaid after a definite due date,' but instead 'was for an indefinite total amount which was payable in installments over the uncertain period' of the member's life."  *Id.* at 240 (quoting *Baker*, 559 S.E.2d at 454).  To further support its finding of divisibility, the court stated that the members "did not have an immediate claim for the entirety of all future unearned monthly retirement benefits payable under the contract," as the amount of this benefit would vary depending on each member's lifespan.  *Id.* (citation omitted).

The divisible contract in *Plymel* parallels the contract here.  Both contracts involve successive payments of an uncertain amount for an indefinite period of time.  And neither contract allows a plaintiff to recover the entirety of the

8

breaching party's obligation.  In short, both contracts are divisible.[4]  Accordingly, the statute of limitations "runs separately as to each payment [of healthcare premiums and cost indemnification] when it becomes due."  *Id.* at 240.  To that end, the Appellants may pursue contract claims for each alleged breach occurring within the limitations period.

## CONCLUSION

For the foregoing reasons, we reverse the district court's partial judgment on the pleadings and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**

---

[4] Admittedly, the contract in *Plymel* involved regularly timed payments of a fixed value. In contrast, the contract here involves intermittent indemnification or payment of unpredictably varying costs.  But this quality need not differentiate divisible contracts from entire contracts. Georgia courts have found contracts divisible where the defendant owed intermittent payments of varying values.  *See, e.g.*, *Carswell v. Oconee Reg'l Med. Ctr., Inc.*, 605 S.E.2d 879, 880–81 (Ga. Ct. App. 2004) (holding divisible a contract requiring a doctor to pay a percentage of his fluctuating profits to plaintiff–hospital).  In fact, a varying payment obligation further substantiates a finding of divisibility here.  It amplifies the extent to which the ACC's performance ultimately involves "indefinite total amount[s]."  *Baker*, 559 S.E.2d at 454.